701 F.2d 580
 Mary CURRY and Jessie McIntire, Plaintiffs-Appellees,
v.
John T. DEMPSEY, Director, Michigan Department of Social
Services, Defendant-Third-Party Plaintiff,
v.
UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, et
al., Third-Party Defendants-Appellants.
 No. 81-1587.
 United States Court of Appeals,
Sixth Circuit.
 Argued Dec. 2, 1982.
Decided Feb. 28, 1983.
 
 Robert C. Greene, U.S. Atty., Grand Rapids, Mich., William K. Basinger, Asst. Atty. Gen., Lansing, Mich., Gwenda Jones Kelly (argued), Dept. of Health & Human Services, Baltimore, Md., for third-party defendants-appellants.
 Mary Ellen Drolet (argued), Berrien County Legal Services Bureau, Inc., St. Joseph, Mich., for plaintiffs-appellees.
 Before MARTIN and KRUPANSKY, Circuit Judges and BROWN, Senior Circuit Judge.
 KRUPANSKY, Circuit Judge.
 
 
 1
 This is an appeal from a judgment of the District Court, 520 F.Supp. 70, for the Western District of Michigan which held that appellees are entitled to receive benefits under the Aid to Families with Dependent Children program (AFDC), 42 U.S.C. Sec. 601 et seq., from the respondent, third-party plaintiff, the Michigan Department of Social Services (DSS) and that the United States Department of Health and Human Services (HHS)[1] must provide federal financial participation in the payment of such benefits.
 
 
 2
 The factual background of this controversy is not in dispute. Appellee Mary Curry (Curry) became the legal custodian of a minor, Imogene Moore, pursuant to an order of the Juvenile Court of Dallas County, Texas, dated May 27, 1969. Curry, having moved to the State of Michigan, contacted DSS on June 28, 1976 in an effort to obtain AFDC. Her request was denied because she was not a "relative" of the minor as that term is defined by the Act and applicable regulation.[2]
 
 
 3
 Appellee Jessie McIntire (McIntire) was appointed the legal guardian of a minor, Katherine Skorchard, on August 8, 1975 by the Probate Court of Berrien County, Michigan. In August of 1976 McIntire applied to DSS for AFDC. Her application was also rejected because she was not related to her ward.
 
 
 4
 Both Curry and McIntire appealed from their respective denials and a consolidated hearing was conducted on November 29, 1976 before an Administrative Law Judge (ALJ). The ALJ issued separate opinions affirming the administrative decisions on February 22, 1977.
 
 
 5
 Pursuant to M.C.L.A. Sec. 400.37, Curry and McIntire filed a joint petition for review of the ALJ's decision in the Circuit Court for the County of Berrien, Michigan on March 28, 1977. On April 27, 1977 the respondent in the review proceedings, DSS, removed the case to the District Court for the Western District of Michigan and filed a third-party complaint against HHS.
 
 
 6
 The district court, on July 22, 1981, granted the appellees' motion for summary judgment finding that Congress intended children living with their legal guardians to be eligible for AFDC benefits irrespective of the relationship between the ward and legal guardian.[3] This appeal ensued.
 
 
 7
 The AFDC program is a joint, federal-state effort administered by the states subject to federal statute and regulation. 42 U.S.C. Sec. 601 et seq. As its title would indicate, the program is designed to provide financial aid to "dependent children." For purposes of the program "dependent child" is defined as follows:
 
 
 8
 (a) The term "dependent child" means a needy child (1) who has been deprived of parental support or care by reason of the death, continued absence from the home, other than absence occasioned solely by reason of the performance of active duty in the uniformed services of the United States, or physical or mental incapacity of a parent, and who is living with his father, mother, grandfather, grandmother, brother, sister, stepfather, stepmother, stepbrother, stepsister, uncle, aunt, first cousin, nephew, or niece, in a place of residence maintained by one or more of such relatives as his or their own home, and (2) who is (A) under the age of eighteen, or (B) at the option of the State, under the age of nineteen and a full-time student in the secondary school (or in the equivalent level of vocational or technical training), if before he attains age nineteen, he may reasonably be expected to complete the program of such secondary school (or such training);
 
 
 9
 42 U.S.C. Sec. 606(a) as amended effective October 1, 1982; Pub.L. No. 97-248 Sec. 153, 96 Stat. 396.
 
 
 10
 The regulations promulgated by the Secretary of HHS have accorded the statutory definition a somewhat expansive construction. Specifically, 45 C.F.R. Sec. 233.90 provides in pertinent part:
 
 
 11
 (A) A child may be considered to meet the requirement of living with one of the relatives specified in the Act if his home is with a parent or a person in one of the following groups:
 
 
 12
 (1) Any blood-relative, including those of half-blood, and including first cousins, nephews, or nieces, and persons of preceding generations as denoted by prefixes of grand, great, or great-great.
 
 
 13
 (2) Stepfather, stepmother, stepbrother, and stepsister.
 
 
 14
 (3) Person who legally adopt a child or his parent as well as the natural and other legally adopted children of such persons and other relatives of the adoptive parents in accordance with State law.
 
 
 15
 (4) Spouses of any person named in the above groups even after the marriage is terminated by death or divorce.
 
 
 16
 It is uncontroverted that the appellees in the instant matter do not fall within the scope of the Act or regulation. Nevertheless, as indicated, the district court concluded that Congress intended to permit children residing with their legal guardians to be eligible for AFDC.
 
 
 17
 The explicit purpose of AFDC is to "encourage[ ] the care of dependent children in their own homes or in the homes of relatives" and "to help maintain and strengthen family life." 42 U.S.C. Sec. 601. As the Supreme Court observed in Burns v. Alcala, 420 U.S. 575, 583, 95 S.Ct. 1180, 1186, 43 L.Ed.2d 469 (1975):
 
 
 18
 The AFDC program was originally conceived to substitute for the practice of removing needy children from their homes and placing them in institutions, and to free widowed and divorced mothers from the necessity of working, so that they could remain home to supervise their children. This purpose is expressed clearly in President Roosevelt's message to Congress recommending the legislation, H.R.Doc. No. 81, 74th Cong., 1st Sess., 29-30 (1935), and in committee reports in both Houses of Congress, S.Rep. No. 628; 74th Cong., 1st Sess., 16-17 (1935); H.R.Rep. No. 615, 74th Cong., 1st Sess., 10 (1935). See Wisdom v. Norton, 507 F.2d 750, 754-755 (CA 2 1974); Note, Eligibility of the Unborn for AFDC Benefits: The Statutory and Constitutional Issues, 54 B.U.L.Rev. 945, 955-958 (1974). The restricted purpose of the AFDC program is evidenced in the Act itself by the limitations on aid. The Act originally authorized aid only for children living with designated relatives. The list of relatives has grown, ... but there is still no general provision for AFDC payments to needy children living with distant relatives or unrelated persons, or in institutions.
 
 
 19
 (emphasis added) (footnotes omitted). Congress intended AFDC to assist a limited class of children, i.e., those children residing with a specified relative. Under Michigan law the appellees may, as the district court emphasized, possess many of the same duties and responsibilities as parents,[4] but Congress simply did not intend the AFDC program to extend to children in these situations.
 
 
 20
 This conclusion is fortified by a review of the evolution of the AFDC program. AFDC was enacted as Title IV of the Social Security Act of 1935.[5] The original definition of "dependent child" limited the class of relatives with whom an eligible child could reside to a "father, mother, grandfather, grandmother, brother, sister, stepfather, stepmother, stepbrother, stepsister, uncle or aunt." Sec. 406, 49 Stat. 629. In 1956, in order to "permit additional children to have the advantages of life in a home maintained by a close relative," Sen.Rep. No. 2133, 84th Cong., 2d Sess. reprinted in [1956] U.S.Code Cong. & Admin.News 3877, 3907, Congress extended the degree of consanguinity to include first cousins, nephews and nieces. Act. Aug. 1, 1956, Sec. 321, 70 Stat. 850.
 
 
 21
 Congress again acted to extend the scope of the AFDC program in 1961 when it supplemented the Act with two new sections. Those amendments permitted, under specified criteria, children of unemployed parents and children in foster homes to qualify as "dependent children" within the meaning of the Act. Pub.L. No. 87-31 Secs. 1, 2, 75 Stat. 75, 76.
 
 
 22
 Thus, it is evident that Congress has recognized the limited scope of the AFDC program, and, when so inclined, has expressly broadened that scope. Given this statutory development this Court is not disposed to impute to Congress an unexpressed intent to include children living with their legal guardians in the definition of "dependent child."
 
 
 23
 Indeed the Court would observe that in the amendments of Part B of Subchapter IV, relating to child welfare services, and the addition of Part E, relating to adoptive assistance, effected by the Adoption Assistance and Child Welfare Act of 1980, Pub.L. 96-272, 94 Stat. 515 "[t]he term 'parents' means biological or adoptive parents or legal guardians as determined by applicable State law." 42 U.S.C. Sec. 675 (emphasis added). Hence, Congress was aware that legal guardianship can be equated, for certain purposes, with parenthood. Congress declined to incorporate this definition of "parent" into the AFDC program and this Court cannot invade the Congressional domain by legislating through judicial decree. Accordingly, the district court's resolution cannot stand.
 
 
 24
 By its decision the lower court was not required to address appellees equal protection argument. However, both parties having fully briefed the issue on appeal, and in the interests of judicial economy, this Court deems it appropriate to consider the constitutional questions presented.[6] See United States v. Tolbert, 692 F.2d 1041 at 1046 (6th Cir.1982).
 
 
 25
 It is well-settled that "governmental decisions to spend money to improve the general public welfare in one way and not another are 'not confided to the courts. The discretion belongs to Congress, unless the choice is clearly wrong, a display of arbitrary power, not an exercise of judgment.' " Mathews v. DeCastro, 429 U.S. 181, 185, 97 S.Ct. 431, 434, 50 L.Ed.2d 389 (1976) quoting Helvering v. Davis, 301 U.S. 619, 640, 57 S.Ct. 904, 908, 81 L.Ed. 1307 (1937). "So long as its judgments are rational, and not invidious, the legislature's efforts to tackle the problems of the poor and the needy are not subject to a constitutional straightjacket." Jefferson v. Hackney, 406 U.S. 535, 547, 92 S.Ct. 1724, 1732, 32 L.Ed.2d 285 (1972). Equal protection of the law "does not require that a [government] must choose between attacking every aspect of a problem or not attacking the problem at all." Dandridge v. Williams, 397 U.S. 471, 487-88, 90 S.Ct. 1153, 1162, 25 L.Ed.2d 491 (1970).
 
 
 26
 Applying these principles to the matter sub judice, it is apparent that the appellees' equal protection claim is without merit. In promulgating the AFDC program Congress elected to confront one consequence of poverty--the disintegration of family--by providing financial assistance to family units consisting of "dependent children" and their "relatives" as those terms are defined by the statute and regulation. Certainly this is a rational method of challenging the pressures poverty places upon the family relationship.
 
 
 27
 This Court is mindful of the correlation between the effects of poverty upon family relationships and ward-legal guardian relationships. The Constitution, nevertheless, does not impose on Congress an obligation to simultaneously address every facet of economic hardship, nor does it "empower this Court to second-guess [Congress, which is] charged with the difficult task of allocating limited public welfare funds among the myriad of potential recipients." Dandridge v. Williams, supra at 488, 90 S.Ct. at 1163.
 
 
 28
 In accordance with the foregoing, the judgment of the district court is erroneous and is hereby reversed.
 
 
 
 [1]
 As originally captioned, the case referred to the Department of Health, Education and Welfare. That Department was redesignated the Department of Health and Human Services, effective May 4, 1980, by virtue of Pub.L. 96-88, 93 Stat. 668
 
 
 [2]
 See, infra p. 3-5
 
 
 [3]
 Prior to the district court's order the appellees began receiving financial assistance pursuant to Michigan's General Assistance Program in an amount equal to what they would have been entitled under AFDC. As the district court noted, the General Assistance Program possesses differently eligibility and stricter resource requirements than AFDC. Accordingly, the case has not become moot
 
 
 [4]
 See M.C.L.A. Sec. 700.431
 
 
 [5]
 The provisions of the AFDC program presently appear in Chapter 7, Subchapter IV, Part A of Title 42 of the United States Code
 
 
 [6]
 The Due Process Clause of the Fifth Amendment encompasses equal protection principles. Mathews v. DeCastro, 429 U.S. 181, 183 n. 1, 97 S.Ct. 431, 432 n. 1, 50 L.Ed.2d 389 (1976)