**Vera SADLER, on Behalf of herself and her legal ward, Ruby BAILEY, Plaintiff,**

v.

**Charles M. ATKINS, Commissioner of the Department of Public Welfare, Commonwealth of Massachusetts, Defendant and Third-Party Plaintiff,**

v.

**Margaret M. HECKLER, Secretary of Health and Human Services, Third-Party Defendant.**

Civ. A. No. 82–3085–K.

United States District Court, D. Massachusetts.

Nov. 19, 1984.

Barbara Sard, Greater Boston Legal Services, Roxbury, Mass., Peter Rice, Greater Boston Legal Service, Boston, Mass., for plaintiff.

Eyan Slavitt, Nancy Serventi, Asst. U.S. Attys., H. Reed Witherby, Asst. Atty. Gen., Boston, Mass., for defendants.

## Opinion

KEETON, District Judge.

Plaintiff, Vera Sadler, filed this action against the Commissioner of the Massachusetts Department of Public Welfare (Commissioner) for a denial of benefits under the Aid to Families with Dependent Children (AFDC) program. *See* 42 U.S.C. § 601, *et seq.* (1982). Plaintiff moves for partial summary judgment. The Commissioner cross-moves for partial summary judgment. The third-party defendant, the Secretary of Health and Human Services (Secretary), moves for summary judgment on all of the federal claims.

### I.

All parties agree that the facts are undisputed. Soon after the plaintiff became the legal guardian of Ruby Bailey, a minor, she applied for AFDC benefits with the Commissioner. The Commissioner denied the plaintiff's application on the ground that the Massachusetts regulation defining an eligible "dependent child" did not include a ward living with a legal guardian. *See* 106 C.M.R. § 303.210 (1983). Plaintiff appealed this determination.

After exhausting her administrative remedies, plaintiff filed this action in Massachusetts Superior Court against the Commissioner. In state court plaintiff argued that the state regulation violated (1) the Social Security Act and the corresponding regulations, (2) the Equal Protection Clauses of the federal and state Constitutions, and (3) a prior Suffolk Superior Court decision. The Commissioner subsequently filed a third-party complaint against the Secretary in order to protect the state's eligibility for federal financial participation. The Secretary removed this action to this court pursuant to 28 U.S.C. § 1442 (1982).

Adjudication of this dispute has been delayed pending resolution of a controversy as to whether the matter was ripe for adjudication under the then-existing posture of the case. All parties now agree that the case is now ripe for determination of motions for summary judgment as to the plaintiff's federal law claims.

Plaintiff's only relevant relationship to Ruby Bailey is that plaintiff is Ruby Bailey's legal guardian. Plaintiff's right to benefits under the AFDC program depends upon her showing that Ruby Bailey comes within the definition of a "dependent child." To be a "dependent child," the child must be living with a person who has one of the specified relationships to the child. The federal statutory definition in 42 U.S.C. § 606(a) (1982), the federal regulatory definition in 45 C.F.R. § 233.90(c)(1)(v)(A) (1983), and the state regulatory definition in 106 C.M.R. § 301.210 (1983), are alike in naming relatives by consanguinity and affinity as having a qualifying relationship but never referring to a guardian as a person having a qualifying relationship to the child. Plaintiff nonetheless argues that the statute and federal regulations should be construed as including the guardian-ward relationship among those supporting a determination that Ruby Bailey was a "dependent child," and that anything to the contrary in the state regulation is precluded by applicable federal law. In order to determine whether this contention can be sustained, I examine the statute, the legislative history, and the federal and state regulations.

### II.

Congress enacted the AFDC program to provide federal funds on a matching fund basis with participating states "[f]or the purpose of encouraging the care of dependent children in their own homes or in the homes of relatives." 42 U.S.C. § 601 (1982). *See* H.R. No. 615, 74th Cong., 1st Sess., 10 (1935). *See generally Drysdale v. Spirito*, 689 F.2d 252, 253 (1st Cir.1982) (description of AFDC program in Massachusetts). To receive aid under the program, a family must include a dependent child. The most recent version of the stat-

ute defines the term "dependent child" in pertinent part as

a needy child (1) who has been deprived of parental support or care ... and who is living with his father, mother, grandfather, grandmother, brother, sister, stepfather, stepmother, stepbrother, stepsister, uncle, aunt, first cousin, nephew, or niece, in a place of residence maintained by one or more of such relatives as his or their own home ...

42 U.S.C. § 606(a) (1982).

The Secretary has promulgated the following regulation interpreting the statute:

A child may be considered to meet the requirement of living with one of the relatives specified in the Act if his home is with a parent or a person in one of the following groups:

(1) Any blood relative, including those of half-blood, and including first cousins, nephews, or nieces, and persons of preceding generations as denoted by prefixes of grand, great, or great-great.

(2) Stepfather, stepmother, stepbrother, and stepsister.

(3) Person[s] who legally adopt a child or his parent as well as the natural and other legally adopted children of such persons, and other relatives of the adoptive parents in accordance with State law.

(4) Spouses of any persons named in the above groups even after the marriage is terminated by death or divorce.

45 C.F.R. § 233.90(c)(1)(v)(A) (1983).

Under the AFDC program, Massachusetts has promulgated regulations that closely parallel the federal statute and regulations. "To be eligible, the dependent child must live with a relative responsible for his or her day-to-day care in a place of residence maintained as a home." 106 C.M.R. § 303.200 (1983).

The applicant or recipient must be related to the dependent child in one (1) of the following ways:

(1) A blood relative, including a mother, father, sister, brother, niece, nephew, aunt, uncle, or first cousin, or any of these relatives of the preceding generation as denoted by prefixes of grand, great, or great-great. (Second and third cousins are not included under this definition. Blood relatives include those of half-blood);

(2) A stepfather, stepmother, stepbrother or stepsister;

(3) A parent by legal adoption or any of the adopting parent's blood relatives as defined above, natural children, or adopted children; or

(4) A spouse of any person named above, even if the marriage has been terminated by death or divorce.

*Id.* § 303.210. The quoted sections are from the most current version of the Code of Massachusetts Regulations. Although it appears that the regulations have been amended in the last few years, the parties do not contend that the amendments affect the outcome of this case.

The primary issue in this case is whether a minor ward living with an unrelated legal guardian qualifies as a dependent child under the federal statute and regulations. Plaintiff argues that Congress did not intend for § 606(a) to enumerate an exhaustive list of caretaker relatives. Thus, she contends that, in light of the general purpose of the AFDC to provide a family-like environment for needy children, I should interpret the federal statute and regulations to include the guardian-ward relationship. This interpretation would invalidate the Massachusetts regulation insofar as it purports to exclude benefits to minor wards.

A recent decision of the Sixth Circuit has refused to adopt the plaintiff's position. *See Curry v. Dempsey,* 701 F.2d 580 (6th Cir.1983). The reasoning and analysis of this decision are persuasive. The language of the federal statute and regulations and its legislative history do not support an expansive interpretation of the relational requirement.

■ The language of the federal statute defining a "dependent child" is very specific. *See* 42 U.S.C. § 606(a) (1982).

Section 606(a) unambiguously lists the specific relatives with whom a needy child must reside for purposes of AFDC eligibility. An unrelated legal guardian clearly does not fall within the relational categories enumerated by Congress. Plaintiff argues that the Secretary's regulation significantly expands the definition of a dependent child, and that for this reason the statute should not be interpreted narrowly. I agree that the regulation expansively construes the statutory definition by including individuals related to those included in the statute by blood, marriage, or adoption. However, the regulation does not include individuals unrelated to the individuals specified in the statute; nor does it suggest that the statute is simply a guideline for the award of benefits. And, the Secretary's regulation interpreting the Social Security Act is entitled to substantial deference. *See Blum v. Bacon,* 457 U.S. 132, 141–42, 102 S.Ct. 2355, 2361–62, 72 L.Ed.2d 728 (1982).

This interpretation of the dependent child provision is supported by the history of congressional amendments to the statute. *See Roosevelt Campobello International Park Commission v. United States Environmental Protection Agency,* 711 F.2d 431, 436–37 (1st Cir.1983) ("subsequent Congressional declaration of an act's intent is entitled to great weight in statutory construction."). The 1935 statute defined the caretaker relative to include "father, mother, grandfather, grandmother, brother, sister, stepfather, stepmother, stepbrother, stepsister, uncle, or aunt." Social Security Act of 1935, Pub.L. No. 271, § 406(a), 49 Stat. 620, 629 (1936). In 1956 Congress amended this relational provision to include "first cousin, nephew, or niece." Act of August 1, 1956, Pub.L. No. 880, § 321, 70 Stat. 807, 850 (1957). According to the Senate Report, this amendment was intended to extend "the degree of relationship slightly beyond the present law. This will permit additional children to have the advantages of life in a home maintained by close relatives." S.Rep. No. 2133, 84th Cong., 2d Sess., 30, *reprinted in* 1956 U.S. Code Cong. & Ad.News 3877, 3907. Al-

though Congress has amended the AFDC program in various areas since 1956, it has not changed the relational requirements enumerated in § 606(a). In fact the congressional enactment of the AFDC foster care program demonstrates the recognition of the limited coverage of the regular AFDC program. *See* 42 U.S.C. § 608 (1982). The language and history of the AFDC amendments support a straightforward rather than expansive interpretation of the relational requirement. *Cf. Curry,* 701 F.2d at 583.

The legislative history of the 1935 statute similarly supports the congressional intent to grant AFDC benefits only to children living with certain specified relatives. *Id.* at 582–83. Congress created the AFDC program to limit "the practice of removing needy children from their homes and placing them in institutions, and to free widowed and divorced mothers from the necessity of working, so that they could remain home to supervise their children." *Burns v. Alcala,* 420 U.S. 575, 581–82, 95 S.Ct. 1180, 1184–85, 43 L.Ed.2d 469 (1975) (citing H.R.Doc. No. 81, 74th Cong., 1st Sess., 29–30 (1935); S.Rep. No. 628, 74th Cong., 1st Sess., 16–17 (1935); H.R.Rep. No. 615, 74th Cong., 1st Sess., 10 (1935)). After reviewing the legislative history of the AFDC, the Supreme Court noted that "The act originally authorized aid only for children living with designated relatives. The list of relatives has grown, ... but there is still no general provision for AFDC payments to needy children living with distant relatives or unrelated persons ...." *Id.* at 582, 95 S.Ct. at 1185 (footnotes omitted).

### III.

Plaintiff argues that two recent amendments of the AFDC statute, though directed to matters other than the definition of a "dependent child," should be held to have manifested a congressional intent regarding the definition of a "dependent child" contrary to the determination I have reached in part II, above.

First, she argues that the following provision indicates that Congress intended that guardians and wards receive AFDC benefits.

["A State plan ... must" ] provide that any payment required to be made under section 656 or 657 of this title to a family shall be made to the resident parent, legal guardian, or caretaker relative having custody of or responsibility for the child or children;

42 U.S.C. § 654(12) (1982), *enacted by* Social Services Amendments of 1974, Pub.L. No. 93–647, § 454, 88 Stat. 2337, 2354–55 (1976). On its face, this provision is aimed at causing benefits to be paid to a person who is likely to cause them to be properly applied for the benefit of the dependent child. It is aimed at avoiding misuse of benefits, not at determining whether benefits are due. Nothing in the legislative history suggests a different objective. *See* 1974 U.S.Code Cong. & Ad.News 8133. Nor does the legislative history clarify the use of the term "legal guardian." In these circumstances, the most reasonable interpretation is that Congress referred to "legal guardians" in their role as persons legally responsible for receiving and applying benefits when the caretaker relative is not sui juris and thus is not legally recognized as capable of managing the AFDC grant for the benefit of the dependent child. *See* 42 U.S.C. §§ 605, 1311 (1982) (provision enacted in 1962). Also within the scope of this manifested purpose are cases in which excess payments are to be made after AFDC assistance is terminated. *See id.* § 657(c).

Second, plaintiff argues that the Deficit Reduction Act of 1984 demonstrates the congressional intent to include guardians and wards in the AFDC program. *See* Pub.L. No. 98–369, 98 Stat. 494. Section 2640 of the Act added the following paragraph to the Social Security Act:

["A State plan ... must" ] provide that in making the determination under paragraph (7) with respect to a dependent child whose parent or legal guardian is under the age selected by the State pursuant to section 406(a)(2), the State agency shall (except as otherwise provided in this part) include any income of such minor's own parents or legal guardians who are living in the same home as such minor and dependent child, to the same extent that income of a stepparent is included under paragraph (31).

Pub.L. No. 369, 98th Cong., 2d Sess., § 2640(a)(3), 98 Stat. 494, 1145 (enacting 42 U.S.C. § 602(a)(39)). All counsel have advanced arguments that, explicitly or implicitly, are premised on the notion that it is not possible to read as meaning literally what they say, the two phrases (1) "whose parent or legal guardian is under ... age ..." and (2) "include any income of such minor's own parents or legal guardians who are living in the same home ...." I conclude that the premise of these arguments is ill-founded. It is reasonable to read the statute as meaning what it says and saying what it means.

The phrase "parent or legal guardian" plainly refers to the dependent child's parent or the dependent child's legal guardian. Of course, it is often true that a parent of a dependent child is underage. Less often a legal guardian is underage. However, state law relating to appointments of guardians for living persons who are minors or otherwise legally incompetent to manage their own affairs may take account of two distinct needs—protection of the person and protection of the person's financial affairs. *See generally* R. MacKay, *The Law of Guardianships* 24–53 (3d ed. 1980) (describing the different types of guardianships available to care for the different needs of a child). Indeed separate persons may be appointed as guardian of the person and guardian of the financial affairs of a minor. Thus, a state tribunal (often a "probate court") may well find, for example, that an underage sister of a deceased or disabled mother of a dependent child is, from the perspective of the interests of the child, the best person to serve as guardian of the person of the child. The tribunal might also find a need in such circumstances either to appoint a legal guardian of the affairs of the dependent

child to receive and manage the funds that are to be received and expended for the benefit of the dependent child, or to appoint a legal guardian of the underage sister to receive and manage these funds for the benefit of the dependent child, as well as any other funds of the underage sister. Thus, in such circumstances as these, two or more persons would be designated by the state tribunal as "legal guardians"— one, the underage sister, as legal guardian of the person of the dependent child and one or more others as legal guardian of the financial affairs of the dependent child, or as legal guardian of the person of the underage sister, or as legal guardian of the financial affairs of the underage sister.

Also, even when the functions of guardian of the person and guardian of the financial affairs are not separated, two persons may be appointed to serve jointly as guardians of the person and affairs of a minor.

It is a reasonable construction of the statute that the minor referred to in the phrase "such minor's own parents or legal guardians" is not the dependent child but instead an underage parent of the dependent child or an underage guardian of the dependent child. Thus, the phrase "such minor's own parents or legal guardians" may be read as applying to circumstances in which both parents are living in the same home with "such minor" and the dependent child. Also, it may be read as applying to circumstances in which two persons are appointed to serve jointly as guardians of "such minor," and both are living in the same home with "such minor" and the dependent child.

Because the statute reasonably can be read, both literally and in the context of apparent objectives and legislative history, as meaning what it says, it is inappropriate for a court to invoke precedents dealing with drafting errors—for example, precedents for reading "shall" in a statute as meaning "shall not," when the context plainly supports that meaning. *See Johnson v. United States Gypsum Co.,* 217 Ark. 264, 229 S.W.2d 671 (1950); H. Hart & A. Sacks, *The Legal Process: Basic Prob-* *lems in the Making and Application of Law* 1219 (1958).

In the present case, moreover, even if one is persuaded that a drafting error occurred (for example, in using "guardians" where "guardian" was meant), it does not follow that either the Secretary or a court is for that reason free to treat the references to "guardian" and "guardians" in this amendment as intended to redefine "dependent child." Indeed, there is an independent reason for rejecting plaintiff's contention that the Deficit Reduction Act of 1984 demonstrates a congressional intent to include the guardian-ward relationship among those that are qualifying relationships for determining whether Ruby Bailey is a dependent child. The eligibility requirement—the definition of "dependent child"—appears in 42 U.S.C. § 606(a) (1982). The Deficit Reduction Act of 1984 adds a paragraph to 42 U.S.C. § 602 (1982), which in part governs the rules for attributing income of the family once it is eligible for AFDC benefits. Section 602 does not define a "dependent child" under the AFDC. Under the new provision, it is not alone the income of the dependent's child's parents and guardian or guardians that is counted. Also counted toward determining AFDC need, as I read the statute, is the income of parents or guardian(s) of "such minor" who live in the same home "as such minor and dependent child." Thus, the dependent child's guardian's guardian, living in the same home, is among those whose income is counted toward determining AFDC need. But whether or not this interpretation is accepted, the basic point remains: the statutory objective was to prescribe what income is counted toward determining AFDC need, not to define "dependent child."

Interpretation of the Deficit Reduction Act of 1984 as saying nothing at all about the definition of "dependent child" is supported by the legislative history of the new Act. The general purpose of the new Act is to reduce federal expenditures. *See* Statement of Rep. Rostenkowski Upon Consideration of the Conference Report on

H.R. 4170, 1984 U.S.Code Cong. & Ad. News, 1446, 1451. An expansion of eligible dependent children would clearly work against that purpose.

For these reasons, I interpret the federal statute and regulations to exclude the guardian-ward relationship from those supporting eligibility under the AFDC program.

## IV.

Plaintiff's motion for partial summary judgment asserts that the interpretation adopted in parts II and III above violates the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution. Although this argument is not thoroughly briefed in the plaintiff's motion, I address it to resolve the only remaining federal issue.

The Sixth Circuit in *Curry v. Dempsey*, 701 F.2d 580, 583–84 (6th Cir.1983), addressed this identical equal protection challenge to the Social Security Act. Using the rational basis level of scrutiny, see *Califano v. Aznavorian*, 439 U.S. 170, 99 S.Ct. 471, 58 L.Ed.2d 435 (1978), the court found that,

> In promulgating the AFDC program Congress elected to confront one consequence of poverty—the disintegration of family—by providing financial assistance to family units consisting of "dependent children" and their "relatives" as those terms are defined by the statute and regulation. Certainly this is a rational method of challenging the pressures poverty places upon the family relationship.

*Curry*, 701 F.2d at 584. An interpretation of the AFDC statute that excludes the guardian-ward relationship is not unconstitutional.

## V.

Because all of the federal claims are resolved in favor of the Secretary, the third-party complaint will be dismissed.

This opinion does not interpret the Massachusetts regulation or express any view as to its compliance with state law. *See*

*Pennhurst State School & Hospital v. Halderman,* —— U.S. ——, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). The remaining state law claims will be remanded to state court.

Plaintiff's motion for partial summary judgment will be denied. Defendant's motion for partial summary judgment will be granted. Third-party defendant's motion for summary judgment will be granted.

Judgment will be entered accordingly.