[Civ. No. 19196. Third Dist. Feb. 9, 1981.]

MAXINE GRANNEMAN, Plaintiff and Respondent, v.
BEVERLEE A. MYERS, as Director, etc., Defendant and Appellant.

COUNSEL

George Deukmejian, Attorney General, Thomas E. Warriner, Assistant Attorney General, Charlton G. Holland and Janet G. Sherwood, Deputy Attorneys General, for Defendant and Appellant.

Bruce Hagel and Catherine L. Hughes for Plaintiff and Respondent.

OPINION

PARAS, J.—The principal issue of this case is the validity of a Medi-Cal regulation prescribing the calculation to be used as a prerequisite to

state aid in determining the share of cost of medical expenses to be paid by married Medi-Cal applicants in the "medically needy" category.[1] We find the challenged regulation consistent with federal requirements and reverse the judgment.

The facts are not in dispute. In February 1978, 66-year-old William Granneman was in a convalescent home for long term medical care. He had been there since August 1977. His wife Maxine, plaintiff herein, continued to live in the couple's home. William and Maxine had been married for 38 years; their sole income was a civil service annuity of $792 per month, the result of William's government employment begun a year after the marriage.

Sacramento County approved Medi-Cal benefits for both William and Maxine in February of 1978. Because the annuity income was ascribed to William, his share of the monthly cost for his medical care under existing regulations was determined to be $464. The figure was reached by deducting a $20 exemption, a health insurance premium of $29.74, an allocation of $253 for Maxine's living expenses, and a $25 allowance for William's needs from the $792 annuity. Maxine requested a hearing before a state referee on the method used to compute the share of cost. Obviously she sought a lesser allocation to William, thus a greater one to herself.

The hearing was held on June 13, 1978. Maxine argued that the regulations under which the calculations allocated her less than half the annuity for her support violated California community property laws, that the regulations were arbitrary and in violation of federal law, and that the regulations encourage dissolution of marriage in contravention of public policy. The hearing officer found the county computation correct, the regulations valid, and the result, while harsh, consistent with community property law. He denied the claim and his decision was adopted by operation of law by the State Department of Health Services. (Welf. & Inst. Code, § 10959.)

Maxine applied to the superior court for a writ of mandate (Code Civ. Proc., § 1094.5) to compel the defendant director of the department to reverse the decision and promulgate new regulations. After a

---

[1]In simple terms, a "medically needy" person is one who has too much income to qualify for assistance under other Medi-Cal programs and too little to pay for his or her necessary medical care. (Welf. & Inst. Code, § 14005.7.)

series of hearings, the court ordered the administrative decision set aside, the regulation rescinded, a new regulation adopted, and William's share of the cost assessment waived until Maxine recouped the difference.

I

On appeal, defendant contends (1) administrative mandate is an improper vehicle for challenging regulations, (2) Maxine failed to exhaust her administrative remedies, (3) the federal government was an indispensable party to the action because the figures used are required by federal regulations, (4) there is no requirement in either federal or California law of the use of the calculations ordered by the court, (5) the court order is in error because William had not yet been in the convalescent home for six months when the county awarded him benefits, and (6) the court erred in awarding "retroactive benefits."

There is no merit in defendant's first two arguments. Code of Civil Procedure section 1094.5 is the exclusive statutory remedy for judicial review of the director's decision after an administrative hearing (Welf. & Inst. Code, § 10962); the validity of a regulation under which a recipient's benefits are denied or limited is a proper issue in such a case. (See, e.g., *Woods* v. *Superior Court* (1981) 28 Cal.3d 668 [170 Cal.Rptr. 484, 620 P.2d 1032]; *Horn* v. *Swoap* (1974) 41 Cal.App.3d 375 [116 Cal.Rptr. 113].)

We have found no case law, and defendant cites none, to support the proposition that the federal Department of Health and Human Resources (formerly H.E.W.) is an indispensable party to an action challenging a state regulation. It is true that the Legislature requires the department to comply with applicable provisions of state and federal law (§ 10740), but it does not follow that a joinder of a federal agency is essential to resolution of litigation involving the issue.

Defendant's fourth contention, that there is no requirement in state or federal law that the community property income of a married couple be "split" for purposes of computing the share of long term medical costs to be paid for care of one of them, states the only meritorious issue in the case.

The six-month provision issue is unavailing. By our reckoning, the period from August to February is six months. The federal and state

definition of a six-month period in this situation does begin after the month in which a couple ceases to live together (42 C.F.R. § 435.822, subd. (b)(1); tit. 22, Cal. Admin. Code, § 50563, subd. (a)), but by the time the case came before the hearing officer in June 1978, even this more restrictive definition had been met and there had been no change in the county's computation methods under consideration. Further, the court ordered recalculation of benefits as of March 1978 when the six months had passed under either definition. As to the "retroactive" benefits issue, it is moot in light of our disposition of the case.

## II

The superior court ordered defendant to rescind section 50563, subdivision (a), of title 22 of the California Administrative Code.[2] (All further references are to title 22 of the California Administrative Code unless otherwise indicated.) That section prescribes the net nonexempt income of the medically needy spouse as the basic sum from which maintenance needs of the other spouse are deducted to determine the former's share of the medical cost. The maintenance need figure involved in the calculations was $253 in 1978 (§ 50603, Cal. Admin. Register 77, No. 27-7-2-77); the current figure is $291 (§ 50603, Cal. Admin. Register 80, No. 3-1-19-80).

---

[2]50563: "(a) The income of an aged, blind or disabled MN [medically needy] person in LTC [long term care] who has a spouse or children shall be treated in the following manner beginning the first of the month following the month the spouses, or the parent and children, began living apart:

"(1) If the MN person in LTC has a spouse or a spouse and children:

"(A) The MN person in LTC shall be in a separate MFBU [Medi-Cal family budget unit].

"(B) The spouse and any children shall be in a separate MFBU, if applying for Medi-Cal.

"(C) The net nonexempt income of the MN person in LTC which is in excess of $25 shall be allocated to the spouse and any children as follows:

"1. Determine the maintenance need for the spouse and children.

"2. Subtract the net nonexempt income of the spouse and children from the amount determined in 1. This is the amount that shall be allocated to the spouse and children from the net nonexempt income of the MN person in LTC which is in excess of $25.

"(2) If the MN person in LTC has only children:

"(A) The MN person in LTC shall be in a separate MFBU.

"(B) The children shall be in a separate MFBU, if applying for Medi-Cal.

"(C) The net nonexempt income of the MN person in LTC which is in excess of $25 shall be allocated to the children as follows:

"1. Determine the maintenance need for the children.

"2. Subtract the net nonexempt income of the children from the amount determined in 1. This is the amount that shall be allocated to the children from the net nonexempt income of the MN person in LTC which is in excess of $25.

"(3) If the MN person in LTC is a stepparent:

The crux of Maxine's argument, both here and at the earlier proceedings, is that the regulation penalizes her for remaining married to William. Defendant conceded in the superior court that marital dissolution would bring about the result sought by Maxine and does not contradict her allegation on appeal that Medi-Cal eligibility workers advise couples who find themselves in a similar circumstance of this fact.[3] In a case where, as here, the only relevant asset is community property income, each spouse would be awarded one-half of it in a dissolution proceeding. (Civ. Code, § 4800.) In this case William's annuity was $792 per month in February 1978, of which defendant allowed $253 for Maxine's maintenance,[4] but if she were to obtain a dissolution, she would presumably be awarded $396 per month as her share of the annuity. It is seemingly unconscionable that she should be put to such a Hobson's choice.

We note parenthetically that the challenged regulation (§ 50563) is not the source of Maxine's dilemma. The allocation of spousal maintenance in section 50563 is made only *after* the amount of income for a medically needy person in long term care has been determined by the department. The department's determination of the amount of available income is governed by section 50513. Subdivision (d) of that section states, "Income is considered to belong to the person who is (1) [n]amed on a negotiable instrument, (2) [w]ho is given cash," or "(3) [w]ho receives the income in kind." Thus section 50513 appears to be the true culprit in the case, since it directs the department to consider community property income as if it were the separate property of the

---

"(A) The stepchildren shall be treated as natural children of the MN person in LTC.

"(B) The allocation shall be determined in accordance with (a)(1) and (2)."

[3]Instead, defendant's reply brief suggests as a possible solution an agreement between Maxine and William to transmute community property to separate property. There is, however, no indication that the county would honor such an agreement and no showing that it would affect the computation of William's share of costs in any way.

[4]Defendant contends the allocation does not reflect the amount actually available to Maxine because the couple is free to allocate their resources as they choose and need not maintain eligibility for Medi-Cal. The contention is patently wrong. The county recognized the couple's need for assistance and predicated it on the payment of a $464 share of William's medical costs. Apart from this figure, it allowed a $20 exemption, a health insurance payment deduction of $29.74 and a $25 deduction for long term care maintenance needs for William. Aside from the health insurance payment which is obviously critical for senior citizens and the minimal allowance for William's needs, the only "resource" left to allocate is the $20 exemption if Medi-Cal eligibility is to be maintained.

spouse in whose name it is delivered. However, since section 50513 was not considered by the trial court, we pass on to the more critical issue.

Regarding section 50563, we are compelled to agree with defendant that section 435.832 of 42 Code of Federal Regulations provides that a state agency *must* make certain deductions from the total income available to medically needy individuals in medical institutions and intermediate care facilities. The agency must deduct an amount for the maintenance needs of a spouse at home. (42 C.F.R. § 435.832, subd. (a) (1979).) That amount must be based on a reasonable assessment of the spouse's financial needs, yet must not exceed the highest of several income standard amounts used to determine eligibility for other aid programs or for a medically needy person who is not institutionalized. (*Id.*, at subds. (a)(1) - (a)(4).) California uses the latter figure, which, as we have noted, was $253 per month in 1978. The highest permissible figure under 42 Code of Federal Regulations section 435.832, subdivision (a), would have been $334, the income standard used to determine eligibility for state supplementary payment to a blind person. (*Id.*, at subd. (a)(1).)

Given this upper limit on spousal maintenance deductions imposed by the federal regulation (which must be accorded supremacy), the trial court erred in invalidating section 50563 which is consistent with the federal mandate. If an inequity results, a change in the governing regulations is in order, but the regulations are not invalid.

The judgment is reversed.

Puglia, P. J., and Wolters, J.,* concurred.

A petition for a rehearing was denied March 4, 1981, and respondent's petition for a hearing by the Supreme Court was denied April 29, 1981.

---

*Assigned by the Chairperson of the Judicial Council.