427 So.2d 1188 (1983)
In the Case of John C. HAMNER.
No. 82-C-0733.
Supreme Court of Louisiana.
February 23, 1983.
*1189 Joseph A. Donchess, Baton Rouge, for applicant.
Gordon J. Hamner, Houma, for respondent.
LEMMON, Justice.
The issue in this case is whether state community property laws are applicable for purposes of determining income eligibility of an applicant for medical assistance benefits under a state plan which was adopted pursuant to federal statutes and approved for federal financial participation.
John Hamner was admitted to a nursing home after being severely disabled by a brain aneurysm. Hamner's representative applied to the Louisiana Department of Health and Human Resources (DHHR) for Nursing Home Vendor Payments under the federal Medicaid Program operated by DHHR. Hamner's application was rejected on the basis that his monthly income exceeded the maximum income level of $714 established by Subpart H of 42 C.F.R. § 435 (1980).[1]
After the Appeals Section upheld the decision, Hamner appealed to the district court, pursuant to La.R.S. 46:107(D). The court reversed the denial of benefits and ordered DHHR to approve defendant's eligibility. The court reasoned that since Hamner's retirement income was community property, only one-half of the monthly *1190 benefits should be considered in determining his eligibility, thus making his income fall below the maximum amount. The court of appeal affirmed. 411 So.2d 567. We granted certiorari to review these decisions. 413 So.2d 498.
42 U.S.C. § 1396 et seq. (1974) authorize federal financial participation in state plans for medical assistance which have been approved by the Secretary of Health and Human Services. Under this Medicaid program, states may provide funds to persons who need financial assistance to pay the cost of medical care and who would qualify for cash assistance under the Social Security Act or Supplemental Security Income (SSI), as established by 42 U.S.C. § 1381 et seq. (1974), but for the fact that they have sufficient income and resources to pay for the essentials of living (other than their medical costs).[2] See generally H. McCormick, Medicare and Medicaid Claims and Procedures §§ 831, 891 (1977). The federal statutes establish certain mandatory requirements for the state plans which are submitted to the Secretary for approval. The program, however, is a joint federal-state program, and the states can impose more restrictive standards than the eligibility requirements established by the statutes.
Once approved by the Secretary, the federal-state medical assistance program is administered by the state. While participation is voluntary, a state which elects to participate must comply with the federal statutes and regulations, including federal eligibility requirements, in order to continue receiving federal funds.
To be eligible to receive medical assistance under the program, a person must be classified as "categorically needy" and "medically needy". "Categorically needy" persons include those who are receiving or who are eligible for SSI benefits for the aged, blind or disabled. See 42 U.S.C. § 1396a(a)(10) (1974). The state plan must provide reasonable standards for determining eligibility for and the extent of medical payments, and the standards must provide for taking into account such income and resources as are available to the applicant. 42 U.S.C. § 1396a(a)(17) (1974); H. McCormick, § 948. However, as noted earlier, a state may use more restrictive eligibility conditions. 42 C.F.R. § 435.10 (1980).
It is undisputed that the Louisiana State Plan submitted to the Secretary for approval provided that "all conditions of eligibility of the SSI program are applied" as to the "categorically needy" because of being aged, blind or dependent. Therefore, SSI eligibility criteria are applicable to the determination of an applicant's eligibility for benefits under the federal-state program for medical assistance.[3]
Subpart K of 20 C.F.R. § 416 (1980) (pertaining to SSI for the aged, blind and disabled) determines the treatment of income and exclusions from income for purposes of SSI eligibility. Section 416.1101(a) requires that "all of his own income", both earned and unearned, be included in calculating an applicant's income for eligibility purposes.[4] *1191 Further, Section 416.1101(b) provides that countable income determines an applicant's eligibility for SSI benefits.[5] Retirement payments are included in unearned income.[6] As to unearned income, only the amount actually available to the claimant is considered. Section 416.1120.
In the present case, Hamner's unearned income from retirement payments must be considered in the eligibility determination. Hamner's representative contends that only one-half of the retirement payments should be considered in calculating "all of his own income", since Hamner's wife under Louisiana law owns the other one-half of the payments. Resolution of this contention turns on whether or not Congress intended national uniformity in establishing the standards for SSI eligibility (which were included in the Louisiana Plan submitted to and approved by the Secretary).
The legislative history of Public Law 92-603, which established the SSI program, indicates a Congressional intent for national uniformity in SSI eligibility standards. That intent was stated as follows:
"Fourth, the bill would substantially improve the effectiveness of the adult assistance programs under the Social Security Act by providing 
"(1) for replacing the three present State-administered programs of assistance to the aged, blind, and disabled with one combined adult assistance program which would be Federally administered by the Social Security Administration and would have nationally uniform requirements for such eligibility factors as the level and type of resources allowed and the degree of disability or blindness". 1972 U.S.Code Cong. & Ad.News 3:4992. (Emphasis added.)
As stated earlier, Louisiana's plan adopted the SSI eligibility standards, which require national uniformity. When DHHR submitted Hamner's application to the federal agency, federal financial participation was denied on the basis that a married applicant with an identical income situation in another state (without community property laws) would be denied eligibility, so that approval of Hamner's application would result in double standards for eligibility.
DHHR originally declined to approve the application on the basis that the applicant did not meet the SSI eligibility requirements incorporated into the Louisiana Plan. Regardless of the ultimate decision of the state courts, the federal agency will not allow federal financial participation in payment *1192 of this particular application. While DHHR could still choose to approve the application (in which case the state would be responsible for 100% of the payments to Hamner, unless the state were successful in overturning the federal agency's determination), DHHR cannot be compelled to approve the application which does not meet the SSI eligibility requirements.
Accordingly, the judgments of the lower courts are reversed, the decision of the Appeals Section is reinstated, and the suit is dismissed.
WATSON, J., dissents.
NOTES
[1] DHHR determined that Hamner's monthly income amounted to $781.12, consisting of $534.80 from Social Security benefits, $9.60 from Medicare, $1.97 from interest on savings and $234.75 from retirement benefits.

42 C.F.R. § 435.1005 (1980) provides that federal financial participation is available only if an applicant's income "does not exceed 300% of the SSI benefit amount payable under § 1611(b)(1)". The benefit payable to Hamner is $238.
[2] In the present case, Hamner unquestionably meets the requirements of age and medical condition. His application was rejected solely because his income exceeds the maximum allowed.
[3] In states that adopted the SSI criteria for eligibility, the SSI standards apply to the determination of the applicant's eligibility for Medicaid. See Medicaid and Medicare Guide (CCH) § 14,311 (1980).
[4] Section 416.1101 provides in part:

"Income-general. (a) Under title XVI of the Act, an individual's income includes all of his own income in cash or in kind, both earned income and unearned income."
Section 416.1102 provides the following definitions:
"(a) Meaning of income. The term `income' for purposes of title XVI means the receipt by an individual of any property or service which he can apply, either directly or by sale or conversion, to meeting his basic needs for food, clothing, and shelter.
"(b) Earned income. The term `earned income' is defined in section 1612(a)(1) of the Act by reference to the definition of wages for purposes of the earnings test (see § 404.429(c) of this chapter) and net earnings from self-employment for coverage purposes (see § 404.1050 of this chapter) under title II of the Act.
"(c) Unearned income. The term `unearned income' means all income that is not included in the definition of `earned income' (see §§ 416.1125-416.1138)."
[5] Section 416.1101(b) provides:

"(b) If countable income (see § 416.1115) equals or exceeds the standard payment amount as set forth in Subpart D of this part, no Federal benefit under title XVI may be paid for that quarter (or month where applicable)."
Section 416.1115 defines countable income as follows:
"(a) the amount of a beneficiary's countable income for a calendar quarter (or shorter period, when applicable) is used to determine whether he is or is not eligible for benefits under title XVI of the Act, and if he is eligible, the amount payable. Countable income is the amount of an individual's income which affects payments under title XVI. It is the sum of:
"(1) His total earned income (as set forth in § 416.1102(b) less his earned income exclusions (as set forth in §§ 416.1145-416.1175)); and
"(2) His total unearned income (as set forth in § 416.1102[c]) less his unearned income exclusions (as set forth in §§ 426.1145-416.1175)."
[6] Section 416.1130 provides:

"The following types of periodic payments are among those included in unearned income; however, this list is not all-inclusive:
* * * * * *
"(b) Pensions or retirement payments. Normally, pension or retirement payments are paid to a worker following his retirement from employment. Such payments may be paid directly by a former employer; however, they also may be paid from a fund, insurance or any similar-purpose source."
See also 42 U.S.C. § 1382a(a)(2)(B) (1974), which includes in the definition of unearned income "any payments received as an annuity, pension, retirement or disability benefit...."