[No. 51068-7. En Banc. July 18, 1985.]

IRENE PURSER, ET AL, *Respondents*, v. KAREN RAHM, *as Secretary of the Department of Social and Health Services, Appellant.*

*Kenneth O. Eikenberry, Attorney General,* and *Ben A. Porter, Assistant,* for appellant.

*Peter Greenfield* and *Barbara A. Isenhour* of *Evergreen Legal Services,* for respondents.

*Mary E. Brumder, Carol S. Gown,* and *David J. Burman* on behalf of Northwest Women's Law Center and American Civil Liberties Union, amici curiae for respondents.

DORE, J.—Karen Rahm, in her capacity as Secretary of the Department of Social and Health Services (DSHS), appeals from a judgment entered by the Thurston County Superior Court. That judgment requires DSHS to apply community property laws in computing eligibility for, and the amount of, Medicaid benefits. Rahm has also renewed a motion to stay enforcement of the judgment, pending federal review. The primary issues on appeal are whether federal regulations preempt this state's community property laws for purposes of eligibility for Medicaid, and whether the trial court erred in denying DSHS' motion to file a third party complaint against Margaret Heckler, the Secretary of the federal Department of Health and Human Services (HHS).

We hold that application of state community property law is consistent with the applicable federal law and affirm the judgment of the Superior Court. We further hold that the trial court did not abuse its discretion in denying the motion to file a third party complaint and find it inappropriate to issue a stay.

## FACTS

The respondents in this class action are married Medicaid applicants and their spouses, where the Medicaid applicant has been or will be denied Medicaid benefits for nursing home costs as a result of DSHS' policy of counting as income of the applicant all income received by that applicant in his or her own name (name–on–the–instrument rule), despite the "community" characterization of that income under Washington's community property laws. The respondents seek to compel DSHS to use this state's community property laws in computing Medicaid eligibility. DSHS argues, on the other hand, that its policy of disregarding community property laws is mandated by federal Medicaid regulations. Further, DSHS contends federal law preempts state law in this matter.

Eligibility for Medicaid benefits depends, in part, on an income test. After one spouse has been in a nursing home

over 30 days, DSHS attributes entirely to each spouse the income received by the couple in that spouse's name. This procedure works to the disadvantage of the class of respondents in this case. For example, respondents Irene and Edward Purser received about $1,740 per month, of which $1,542 was received in checks made payable solely to Edward. In 1978, Edward applied for Medicaid benefits through DSHS. He was found to be eligible. In calculating benefits available to him, however, DSHS considered all income received in his name to be his income. Thus, virtually all of the $1,542 received in his name had to be used to pay for nursing home costs. Irene was left with an income of $323 per month.[1] By contrast, if Irene had been the spouse to go to the nursing home, only $204, the amount received in her name, would have been paid to the nursing home, and Edward would have been left with the $1,542 he received in his own name.

The complaint in this case was filed July 29, 1983. On August 13, 1984, the trial court heard and denied defendant Rahm's motion for leave to file a third party complaint against the Secretary of HHS. DSHS sought to bring the third party complaint in order to bind HHS to the state judgment. On September 14, 1984, partial summary judgment was granted to respondents. Final judgment was entered October 23, 1984.

In granting the partial summary judgment, the trial court found that the procedure used by DSHS violates Washington's community property laws and Medicaid regulations, as well as federal Medicaid laws and regulations. The court enjoined DSHS from denying or reducing any class members' benefits through a failure to apply Washington's community property laws to determine ownership of income. The court ordered DSHS, on request of class members, to

---

[1]The Medicaid program provides that the at–home spouse is to be left with an income level equal to the Supplemental Security Income (SSI) grant level. In 1978, this amount was $323. Irene received $204 per month in her own name; therefore, about $119 of income in Edward's name went to Irene.

review and process Medicaid applications in compliance with the court's order.

Pursuant to the judgment in this case, each spouse will be attributed one–half of the couple's community income. Thus, to return to the example of the Pursers in this case, if all of their income is community income, Irene will live at home on $870 per month, and the other $870 will be paid to Edward's nursing home. The additional money necessary to pay the nursing home will come from state and federal Medicaid funds, and will not further reduce Irene's income.

In short, the court's order, as it applies to those applicants whose community income is *less* than that received in their own names, will result in increased Medicaid benefits to the nursing home residents. This is the effect of the court's order on the class of plaintiffs in this case. It also appears that the court's order requires that community property laws must also be applied to Medicaid applicants whose community income exceeds the income they receive in their own names. This will result in a reduction of Medicaid benefits to those applicants.

The trial court denied DSHS' motion for a stay pending appeal. DSHS then filed a notice of appeal to this court, and moved for a stay of enforcement pending appeal. DSHS argues, in part, that enforcement of the judgment will place DSHS out of compliance with Washington's Medicaid plan which had been submitted to and approved by HHS; that the federal government will not permit DSHS to amend the state plan to comply with the judgment; and that the federal government will deny federal moneys to the State if DSHS complies with the court order. DSHS asserts that as of January 10, 1985, the State was placed on Health Care Financing Administration's Title XIX compliance report for the quarter ending December 31, 1984, which may result in penalties being assessed against the State. DSHS also asserts that on February 19, 1985, it received notice from HHS that its state plan amendment, which had been submitted for purposes of implementing the lower court's decision and assuring con-

tinued receipt of federal funds, was denied. Thus, DSHS concludes, the result of this action by HHS is that any and all claims submitted to HHS will be denied.

## Issues

1. Whether federal regulations preempt Washington's community property laws for purposes of determining the income and, therefore, the benefit eligibility of married Medicaid recipients in nursing homes;

2. Whether the trial court erred in denying DSHS' motion for leave of court to file a third party complaint against Margaret Heckler in her capacity as Secretary of HHS;

3. Whether the renewed motion for stay of enforcement should be granted.

## Federal Preemption

The primary issue in this case is the validity of the name–on–the–instrument rule used by DSHS to determine the ownership of income received by a Medicaid applicant and by the applicant's spouse. In the absence of federal preemption, the ownership of income received by spouses in Washington would be determined by Washington community property law. Each spouse would own an undivided one–half interest in the community income received by either spouse.

DSHS asserts that federal law preempts state community property law and mandates substitution of the name–on–the–instrument rule in determining ownership of spousal income. That rule attributes ownership to the spouse who receives the income in his or her name. The name–on–the–instrument rule is not stated in either federal statutes or regulations and is merely a *practice* of DSHS.

■■ Both appellant DSHS and the respondents in this case agree that the test as to whether federal law preempts state community property law is set forth in *Hisquierdo v. Hisquierdo,* 439 U.S. 572, 581, 59 L. Ed. 2d 1, 99 S. Ct. 802 (1979): State family property law must do major damage to clear and substantial federal interests before the supremacy

clause requires that state law be overridden. The inquiry is "[1] whether the right as asserted conflicts with the express terms of federal law *and* [2] whether its consequences sufficiently injure the objectives of the federal program to require nonrecognition." (Italics ours.) *Hisquierdo,* at 583. *See also McCarty v. McCarty,* 453 U.S. 210, 221, 69 L. Ed. 2d 589, 101 S. Ct. 2728 (1981).

The first question is whether Washington community property rights conflict with express terms of federal law. As described by respondents, the "right" involved in this case is the community property right of the spouse remaining at home to her share of income paid in the name of her spouse.

The Medicaid program is a federal program in which the federal government provides federal matching moneys to states which comply with the laws and regulations enacted by Congress and HHS. 42 U.S.C. § 1396 *et seq.* The Medicaid program was enacted under Title XIX of the Social Security Act for the express purpose of providing medical assistance to the poor and to provide rehabilitation and other services in order that medically needy individuals may regain their independence and have the capacity to care for themselves. 42 U.S.C. § 1396.

Federal law mandates Medicaid coverage for people who qualify for the Supplemental Security Income (SSI) program[2] or the Aid to Families with Dependent Children (AFDC) program.[3] States have the option of establishing additional Medicaid programs for people who do not qualify for SSI or AFDC, but who are nonetheless unable to pay for all of the medical care they need. 42 U.S.C. § 1396a(a). Because of these optional programs, Medicaid benefits vary

---

[2]The Supplemental Security Income program provides financial aid to needy elderly, blind and disabled people. 42 U.S.C. § 1381 *et seq.*

[3]The Aid to Families with Dependent Children program provides financial aid to needy dependent children and to certain adults with whom they are living. 42 U.S.C. § 601 *et seq.*

substantially from state to state.[4] In discussing optional state coverage, the statute refers to "the income and resources requirements of the appropriate State plan" (42 U.S.C. § 1396a(a)(10)(A)(ii)(I), (II)) and to individuals in medical institutions "whose income does not exceed a separate income standard established by the State . . ." 42 U.S.C. § 1396a(a)(10)(A)(ii)(V). Other sections provide that the "income" of applicants must not exceed certain limits. 42 U.S.C. §§ 1396a(f), 1396b(f).

The Medicaid Act requires the states to base assessments of financial need only on "such income and resources as are, as determined in accordance with standards prescribed by the Secretary [of HHS], available to the applicant or recipient . . ." 42 U.S.C. § 1396a(a)(17)(B).

These are the only statutory provisions which deal with an applicant's income. These sections, and the Medicaid statute generally, contain absolutely no indication of any intent to preempt or alter state family property law.

The lack of attention given to the question of income ownership in the Medicaid statute may be explained by the limited context in which it arises. So long as a husband and wife reside together, their income and assets are counted together and "deemed" available to each other for the purposes of determining eligibility for, and the amount of, Medicaid benefits. 42 C.F.R. § 435.723 (1984). *See Schweiker v. Gray Panthers,* 453 U.S. 34, 39, 69 L. Ed. 2d 460, 101 S. Ct. 2633 (1981); *Herweg v. Ray,* 455 U.S. 265, 71 L. Ed. 2d 137, 102 S. Ct. 1059 (1982); *see also* 20 C.F.R. §

---

[4]Washington has elected to establish some optional Medicaid programs. *See* RCW 74.09.700. Under some programs, medical assistance is provided for people who are not eligible for Supplemental Security Income (SSI) or Aid to Families with Dependent Children (AFDC), but who meet the state's definition of financial need when their medical expenses are taken into account. The optional program relevant to this case is the Limited Casualty Program—Medically Needy (Medically Needy). *See* WAC 338-99-005 *et seq.* The Medically Needy program provides medical assistance to people who would be eligible for AFDC or SSI but for the amount of their income. They become eligible for Medicaid after a certain amount of medical expense has been incurred. The amount varies depending on their income.

416.1160 (1984) (supplemental security income grants, SSI). The question of ownership does not ordinarily arise in determining eligibility.

The issue of ownership, however, does arise when one spouse is institutionalized. Specific state and federal regulations govern Medicaid eligibility and benefit levels for nursing home residents. 42 C.F.R. § 435.721 (1984) *et seq.*; WAC 388–95–300 *et seq.* During the first month a married person is in a nursing home, all income of both husband and wife is "deemed" available to the nursing home resident, and expected to be applied to the cost of care. 42 C.F.R. § 435.723 (1984). During this period, it does not matter whether income from a particular source is owned by the husband or by the wife; the income is deemed available to the nursing home resident in either case. There is no dispute between the parties about the deeming rule or DSHS' actions while it applies.

The central question in this case arises in the second month of a married person's residence in a nursing home. Once the eligible spouse in the nursing home begins his or her second full month at the nursing home, federal regulations perceive them as separate individuals and deeming ceases. 42 C.F.R. § 435.725 (1984). Consequently, no longer is one spouse's income considered to be income of the other.[5] The regulations shift emphasis from the spouses as a couple living together and focus on them as individual applicants.

DSHS determines the amount of the nursing home resident's income, and the corresponding amount that must be used to pay for the nursing home or other medical care. The rest will be paid by Medicaid. With the following two exceptions, all of the nursing home resident's income must

---

[5] 42 C.F.R. § 435.723(d) (1984) provides as follows:

"If only one spouse in a couple applies or is eligible [for Medicaid], . . . and they cease to live together, the agency must consider only the income and resources of the ineligible spouse that are actually contributed to the eligible spouse beginning with the month after the month in which they cease to live together."

ordinarily be used to pay for nursing home or other medical care: (1) if a nursing home resident has a spouse at home with an income below the SSI grant level, the resident contributes the amount necessary to bring the income of the spouse at home to a level equal to the SSI grant level;[6] (2) the resident may retain a personal allowance. 42 C.F.R. § 435.725 (1984).

At this point, it becomes necessary to determine what income and resources are the nursing home resident's and what belongs to the spouse at home. The Supplemental Security Income regulations, 20 C.F.R. Part 416 (1984), specify the methodology states must apply in determining what is income and its effect on eligibility. *See* 42 C.F.R. § 435.721(d) (1984). "Income" is defined in 20 C.F.R. § 416-.1102 (1984) as follows:

> Income is anything you receive in cash or in kind that you can use to meet your needs for food, clothing, or shelter. In–kind income is not cash, but is actually food, clothing, or shelter, or something you can use to get one of these.

Additional regulations categorize income as either "earned" or "unearned". Earned income is what you receive as wages or as net earnings from self–employment. 20 C.F.R. § 416-.1110 (1984). "Unearned income is all income that is not earned income", 20 C.F.R. § 416.1120 (1984), and includes "private pensions, social security benefits, disability benefits, veterans benefits, worker's compensation, railroad retirement annuities and unemployment insurance benefits." 20 C.F.R. § 416.1121(a) (1984).

Resources are defined as

> cash or other liquid assets or any real or personal property that an individual (or spouse, if any) owns and could convert to cash to be used for his support and maintenance. If the individual has the right, authority or power to liquidate the property, or his share of the property, it

---

[6]Since January 1, 1984, this amount for a person living alone has been $352.30 for King, Kitsap, Pierce, Snohomish, and Thurston Counties and $331.85 for all other counties in Washington. WAC 388–29–295.

is considered a resource. If a property right cannot be liquidated, the property will not be considered a resource of the individual (or spouse).

20 C.F.R. § 416.1201(a) (1984).

As DSHS notes, the regulations concerning calculation of benefits constantly refer to the applicant as an "individual", *see* 42 C.F.R. § 435.725 (1984), and 20 C.F.R. § 416-.1102 (1984) defines income as "anything you receive in cash or in kind that you can use to meet your needs". DSHS contends that there is no provision in this methodology for the presumption of an applicant's income as community property.

The arguments of DSHS are unpersuasive. Nothing in the Medicaid statute or regulations establishes federal criteria for determining *ownership* of income. Provisions cited by DSHS merely indicate what is income and how an applicant's income is to be treated once ownership has been determined. The payee and the owner of income are not necessarily the same person. Under the Medicaid statute, the State must "provide for taking into account only such income and resources as are . . . available to the applicant . . ." 42 U.S.C. § 1396a(a)(17)(B). Further, the definition of income provides that it must be income *you can use.* Whether income is available to a person, or whether that person can use income from a particular source depends, in part, on ownership of that income.

The federal courts have carefully examined when the receipt of an item of value by an SSI beneficiary constitutes income which is actually available to meet a beneficiary's basic needs. *Summy v. Schweiker,* 688 F.2d 1233, 1235 (9th Cir. 1982). *See also Grunfeder v. Heckler,* 748 F.2d 503 (9th Cir. 1984); *Jackson v. Schweiker,* 683 F.2d 1076 (7th Cir. 1982). For instance in *Tsosie v. Califano,* 651 F.2d 719 (10th Cir. 1981), the court held that pension benefits received by a surviving spouse and intended for support of the spouse's minor children were not income to the spouse, despite the fact that the children's benefits were made payable to the surviving spouse.

The payee of the check should not be determinative. If the money is to be used for the children, it is not the spouse's income, for it is not money "which he can apply . . . to meeting his basic needs for food, clothing, and shelter." 20 C.F.R. § 416.1102(a). Nor is it "actually available" in any meaningful sense. *Id.* § 416.1120.

*Tsosie,* at 723. *Accord, Whaley v. Schweiker,* 663 F.2d 871, 874–75 (9th Cir. 1981). This is an explicit recognition that the methodology for calculating income and resources under the federal criteria does not mandate application of the name–on–the–instrument rule.

DSHS also points to two cases it asserts support its position that federal law preempts state community property law with respect to federal–state public assistance programs. *See Granneman v. Myers,* 115 Cal. App. 3d 846, 171 Cal. Rptr. 583 (1981); *Nolan v. deBaca,* 603 F.2d 810 (10th Cir. 1979) (New Mexico case), *cert. denied,* 446 U.S. 956 (1980). The *Granneman* and *Nolan* decisions are not particularly useful. In *Granneman,* the court did not address the question of ownership under community property law, but focused on the federal regulation providing specific levels of spousal maintenance. The court in *Nolan* simply held that New Mexico implementing regulations for the AFDC program could not presume that a spouse's community property interest was available to a dependent child where federal regulations required actual availability.

Subsequent decisions of the New Mexico courts demonstrate that community property ownership is compatible with the AFDC program. In *Barela v. New Mexico Dep't of Human Servs.,* 94 N.M. 288, 609 P.2d 1244 (Ct. App. 1979), the court had occasion to interpret income provisions of the AFDC program in the context of state community property law. The pertinent federal regulation at issue provided:

> *Factors specific to AFDC*
> (a) *State plan requirement. . . .* In establishing financial eligibility and the amount of the assistance payment, only such net income as is actually available for current use on a regular basis will be considered, and the income only of the [child's natural or adoptive

parent or stepparent legally obligated to support the child under State law of general applicability] will be considered available for children in the household in the absence of proof of actual contributions.

HEW Assistance Programs, 45 C.F.R. § 233.90(a) (1978). *Barela,* at 290. The court held that in New Mexico a stepparent is not under a legal obligation to support stepchildren. Consequently, the federal regulations prohibited the use of the stepparent's income in computing the needs of the stepchild. Nonetheless, the one–half of the stepparent's income that was imputed to his spouse (the stepchild's natural mother) under state community property law could be used in computing AFDC eligibility if such income was shown to be actually available. *Barela,* at 291. *Accord, Duran v. New Mexico Dep't of Human Servs.,* 95 N.M. 188, 619 P.2d 1232 (1980); *Harper v. New Mexico Dep't of Human Servs.,* 95 N.M. 471, 623 P.2d 985 (1980).

Application of state community property law to AFDC eligibility determinations is strong support for the application of community property law to Medicaid.

Washington community property law establishes the ownership rights of husband and wife to assets and income acquired during marriage. *See* RCW 26.16.010 *et seq.* Federal courts recognize that, under Washington's community property system, each spouse has an equal, present and vested half ownership interest in all gains resulting from the labors of the husband or wife. *Poe v. Seaborn,* 282 U.S. 101, 111, 75 L. Ed. 239, 51 S. Ct. 58 (1930); *see generally* Cross, *The Community Property Law in Washington,* 49 Wash. L. Rev. 729, 733–36 (1974). The Court in *Poe* had occasion to consider the phrase "impose a tax on the taxable income of every individual" in the context of Washington community property law. The Court held that spouses are entitled to file separate tax returns, each treating one–half of the community income as income of each of them as an individual:

These sections lay a tax upon the net income of every individual. The Act goes no farther, and furnishes no

other standard or definition of what constitutes an individual's income. The use of the word "of" denotes ownership. It would be a strained construction, which, in the absence of further definition by Congress, should impute a broader significance to the phrase.

(Footnote omitted.) *Poe,* at 109. The Court thus emphasized ownership. It looked to the law of the State as to the ownership of community property and of community income. *See also United States v. Mitchell,* 403 U.S. 190, 29 L. Ed. 2d 406, 91 S. Ct. 1763 (1971).

Since the Medicaid statute and regulations provide no criteria for determining whether income in a particular form or from a particular source is the income of a particular individual, one "must turn to state law to define the property interests involved." *United States v. Overman,* 424 F.2d 1142, 1146 (9th Cir. 1970). The trial court correctly found that community property rights do not conflict with the express terms of federal Medicaid law. To the contrary, application of the name–on–the–instrument rule directly conflicts with the federal regulation stating that income of a nonapplicant spouse shall *not* be considered in determining the eligibility of an institutionalized spouse. 42 C.F.R. § 435.723 (1984).

The second inquiry under *Hisquierdo* is whether assertion of the right to apply community property laws to respondents' income injures objectives of the federal program to the extent that the right should not be recognized. DSHS argues that a major objective of 1972 amendments to the federal Medicaid laws is the achievement of nationally uniform treatment of recipients and nationally uniform requirements for eligibility. *See* H.R. 231, 92d Cong., 2d Sess., *reprinted in* 1972 U.S. Code Cong. & Ad. News 4989, 4992. DSHS contends that treating married couples in community property states differently than those in common law states violates this principle of uniform standards.

We find that application of Washington's community property laws is not incompatible with the federal purpose of providing "federal financial assistance to States that

choose to reimburse certain costs of medical treatment for needy persons." *See Harris v. McRae,* 448 U.S. 297, 301, 65 L. Ed. 2d 784, 100 S. Ct. 2671 (1980). Applying the ownership rules of community property law does not have a disproportionately negative impact on the intended beneficiaries of Medicaid. *See, e.g., Employees Sav. Plan of Mobil Oil Corp. v. Geer,* 535 F. Supp. 1052, 1054 (S.D.N.Y. 1982) (discussing congressional intent as to rights protected by state community property laws in connection with the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.*).

We find unpersuasive the sole decision involving a factual situation similar to that presented in this action. In *In re Hamner,* 427 So. 2d 1188 (La. 1983), the court held that federal law preempted Louisiana's community property laws for purposes of determining Medicaid eligibility. The court reasoned that the Medicaid program expresses an intent that there be nationally uniform requirements for eligibility and, as such, community property states must disregard community property ownership and apply the name–on–the–instrument rule. *Hamner,* at 1191. The Louisiana court further stated:

> Regardless of the ultimate decision of the state courts, the federal agency will not allow federal financial participation in payment of this particular application. While DHHR could still choose to approve the application (in which case the state would be responsible for 100% of the payments to Hamner, unless the state were successful in overturning the federal agency's determination), DHHR cannot be compelled to approve the application which does not meet the SSI eligibility requirements.

*Hamner,* at 1191–92. The *Hamner* court's reliance on the uniformity provisions of Medicaid in determining ownership of income is misplaced. Those parts of the Medicaid statute oriented to uniformity are directed to specific program–related ends. Medicaid is structured to require states to provide at least an essential minimum of coverage. To this end, state plans must cover the cost of a minimum package of medical services, 42 U.S.C. § 1396a(a)(10)(A),

and must provide Medicaid coverage for at least those individuals receiving benefits through the SSI or AFDC programs. 42 U.S.C. § 1396a(a)(10)(A)(i). Other provisions governing state plans seek to assure quality of care and efficient utilization. *E.g.*, 42 U.S.C. § 1396a(a)(30), (31); 42 U.S.C. §§ 1396g, 1396i. No comparable purpose exists for uniformity when determining the income ownership of an institutionalized applicant for Medicaid eligibility purposes.

There is no federal interest in enforcing a uniform family property law on the states in the Medicaid context. The equitable treatment of married people under community property law does no "major damage" to the "clear and substantial" objectives of the Medicaid law.

### THIRD PARTY COMPLAINTS

DSHS contends that the trial court abused its discretion in denying DSHS' motion to bring a third party complaint against Margaret Heckler, in her capacity as Secretary of HHS.

Superior Court Civil Rule 14(a) states:

> At any time after commencement of the action a defending party, as a third party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to him for all or part of the plaintiff's claim against him.

Denial of leave to amend under CR 14(a) is within the discretion of the trial court, subject to review only for abuse of discretion. *Morgan Bros. v. Haskell Corp.*, 24 Wn. App. 773, 604 P.2d 1294 (1979); *Farmers & Merchants Mut. Fire Ins. Co. v. Pulliam*, 481 F.2d 670 (10th Cir. 1973). An abuse of discretion exists only when no reasonable person would take the position adopted by the trial court. *Griggs v. Averbeck Realty, Inc.*, 92 Wn.2d 576, 584, 599 P.2d 1289 (1979).

Whether the trial court abused its discretion is determined in light of such factors as the timeliness of the motion and DSHS' reasons for wanting HHS as a party.

The respondents contend that the trial court had ample

justification for its denial of DSHS' motion: the motion was not timely; HHS had not taken any action to deny federal reimbursement; DSHS had other recourse to protect the State's interest in federal reimbursement if it were denied in the future; and the delay and complications of adding a federal defendant outweighed any advantage to DSHS.

The complaint was filed against DSHS on July 29, 1983. On August 13, 1984, the trial court heard and denied DSHS' motion requesting leave to file the third party complaint. On September 14, 1984, partial summary judgment was granted to the plaintiffs. Final judgment was entered on October 23, 1984.

The purpose underlying the State's motion to join the federal government as a third party defendant to the main cause of action was an attempt to bind the federal government to the court's decision and prevent denial of federal moneys to the State of Washington.

In similar circumstances, other jurisdictions have perceived the threat of denial of federal moneys to a state as a sufficient basis to allow the state to file a third party complaint. *Gibbons v. Rank,* [Oct. 1983–April 1984 Transfer Binder] Medicare & Medicaid Guide (CCH) ¶ 33,583, at 9802 (N.D. Cal. Nov. 28, 1983); *Williamson v. Gibbs,* 562 F. Supp. 687 (W.D. Wash. 1983).

The respondents point out that substantive protection is provided by a federal regulation that expressly assures federal reimbursement for "[p]ayments of assistance within the scope of Federally aided public assistance programs made in accordance with a court order." 45 C.F.R. § 205-.10(b)(3) (1984). In *Georgia v. Heckler,* 583 F. Supp. 1377 (N.D. Ga. 1984), the court ordered HHS to reimburse the state of Georgia for court ordered Medicaid payments, relying upon this regulation.[7] The court interpreted 45 C.F.R. § 205.10(b)(3) (1978) to protect states when they are

---

[7]In the underlying case against the Georgia state agency, the court denied the State's motion to add the Department of Health and Human Services as a third party defendant. *Georgia v. Heckler,* 583 F. Supp. 1377, 1378–79 (N.D. Ga. 1984).

forced to pay Medicaid benefits over the objection of HHS. *Heckler,* at 1380 n.2.

Respondents also indicate that permitting the third party complaint would not necessarily allow DSHS to litigate claims against respondents and HHS in one lawsuit. In *Gibbons v. Rank,* the state agency filed a third party complaint against HHS in a Medicaid eligibility case. It did so less than a month after service of the original complaint, so no leave of court was required. HHS removed the case to federal court. Although the federal court denied the plaintiff's motion to strike the third party complaint, it severed and remanded the claims of the plaintiff against the State to state court.

The plaintiffs in *Gibbons,* like respondents in the present case, were not challenging any federal laws or regulations; rather, they were seeking review of a state agency policy regarding Medicaid eligibility. The state agency in *Gibbons* gained no advantage by adding HHS as a third party defendant.

Moreover, there is significant doubt as to whether a significant controversy exists between DSHS and HHS at this stage of the proceedings to confer jurisdiction over HHS. DSHS' current position is that federal law mandates use of the name–on–the–instrument rule to the exclusion of state community property law. However, it appears that HHS has not instructed DSHS to take this position. Nor do we find any language, express or otherwise, in the Medicaid statute which warrants this approach to determining ownership of income.

There are extensive procedural steps that HHS must take prior to a final determination as to whether state community property laws are preempted and before it can withhold federal funds. First, HHS must make a preliminary determination that a state's procedures fail to comply with federal requirements. Such a preliminary determination raises a question of nonconformity which entitles the state to an administrative hearing. 42 U.S.C. § 1316(a)(2). Withholding of federal funds can take place only pursuant

to a final decision of the Secretary of HHS, made at the conclusion of the administrative hearing, and can only be imposed prospectively. 45 C.F.R. § 213.33 (1984). The Secretary's decision is subject to federal circuit court review. 42 U.S.C. § 1316(a)(3).

In this action, the respondents are not claiming that HHS is violating its governing statute, but that the state agency, in administering the cooperative federal–state medical assistance program, is violating state and federal law. Considering the position taken by DSHS in this controversy, federal consideration of the preemption issue can only be triggered by a judicial decision ordering DSHS to comply with state community property laws in computing eligibility for, and the amount of, Medicaid benefits.

We hold that the trial court did not abuse its discretion in denying DSHS' motion to bring a third party complaint.

STAY OF JUDGMENT

■ Whether a stay pending appeal should be granted depends on (1) whether the issue presented by the appeal is debatable, and (2) whether a stay is necessary to preserve for the movant the fruits of a successful appeal, considering the equities of the situation. *See Shamley v. Olympia,* 47 Wn.2d 124, 286 P.2d 702 (1955); *Kennett v. Levine,* 49 Wn.2d 605, 304 P.2d 682 (1956).

There seems little doubt that the issue presented by this appeal will ultimately require a decision by the Secretary of HHS and possibly federal court review. As to preserving the fruits of a successful appeal, DSHS points to correspondence with federal authorities said to indicate that federal funds will be cut off with respect to respondents' class. HHS has initially denied permission to the State to amend its state plan, such amendment having been proposed to implement the trial court's order. However, initial disapproval by HHS of the proposed state plan amendment is subject to reconsideration within 60 days. Further, denial of reimbursement due under 45 C.F.R. § 205.10(b)(3) (1984) is also subject to administrative and judicial review.

A preliminary administrative decision should not prevail over a judicial decision based on legal principles. Finally, a stay would be inequitable to persons in respondents' class who are presently denied access to their share of community property. Many of these persons are elderly and are in need of that income.

Considering the merits of the respective positions of the parties and the ability to receive the fruits of a successful appeal, and considering the equities of the situation, we find it appropriate to deny DSHS' motion for a stay.

### CONCLUSION

The judgment of the Superior Court is affirmed. There is no basis for use of the name–on–the–instrument rule to the exclusion of state community property law. Application of community property law in computing eligibility for, and the amount of, Medicaid benefits neither conflicts with the express terms of federal law, nor sufficiently injures the objectives of the program to require nonrecognition. The trial court did not abuse its discretion in denying DSHS' motion to bring a third party complaint. We deny DSHS' motion for a stay pending further review.

DOLLIVER, C.J., and UTTER, BRACHTENBACH, PEARSON, ANDERSEN, CALLOW, GOODLOE, and DURHAM, JJ., concur.