4 F.3d 882
 42 Soc.Sec.Rep.Ser. 235
 NEW MEXICO DEPARTMENT OF HUMAN SERVICES, Petitioner,
v.
DEPARTMENT OF HEALTH AND HUMAN SERVICES HEALTH CARE
FINANCING ADMINISTRATION, Respondent.
Willie Ray Jeffries, individually and on behalf of a class
of persons similarly situated; Andres Mares,
individually and on behalf of a class of
persons similarly situated, Intervenors.
 No. 92-9552.
 United States Court of Appeals,
Tenth Circuit.
 Sept. 8, 1993.
 
 Judith C. Hutchison, Asst. Gen. Counsel, New Mexico Human Services Dept., Office of Gen. Counsel, Santa Fe, NM, for petitioner.
 Don J. Svet, U.S. Atty., D. of N.M., Gayla Fuller, Chief Counsel, Region VI, Joel Lerner, Principal Regional Counsel, Charlene M. Seifert, Supervisory Asst. Regional Counsel, Marguerite Lokey, Asst. Regional Counsel, Office of the Gen. Counsel, Dept. of Health and Human Services, Dallas, TX, for respondent.
 Ellen Leitzer, Sr. Citizens Law Office, Inc., Albuquerque, NM, and Jeanne Finberg and Gill Deford, National Sr. Citizens Law Center, Los Angeles, CA, for intervenors.
 Before BALDOCK and KELLY, Circuit Judges, and CAUTHRON,* District Judge.
 PAUL KELLY, Jr., Circuit Judge.
 
 
 1
 The New Mexico Department of Human Services (NMDHS) petitions for review[1] of a final decision of the Secretary of Health and Human Services affirming the disapproval, by the Health Care Financing Administration (HCFA), of a Medicaid plan amendment submitted by NMDHS. By the amendment, designated SPA No. 90-13, NMDHS sought authorization to calculate the financial eligibility of certain married Medicaid applicants using New Mexico community property principles, under which the applicant would be attributed one-half the couple's combined income, instead of the "name-on-the-check" rule prescribed by the Secretary, under which each spouse is attributed the income received in his or her own name. We exercise jurisdiction pursuant to 42 U.S.C. Sec. 1316(a)(3), and reverse the Secretary's decision for the reasons that follow.
 
 I.
 
 2
 The Medicaid program, enacted in 1965 as Title XIX of the Social Security Act, 42 U.S.C. Secs. 1396-1396u, is a cooperative federal-state venture designed to afford medical assistance to persons whose income and resources are insufficient to meet the financial demands of necessary care and services. Atkins v. Rivera, 477 U.S. 154, 156, 106 S.Ct. 2456, 2457, 91 L.Ed.2d 131 (1986). Once a state elects to participate, the federal government shares the costs so long as the state's plan complies with the requirements of the Act and the regulations validly imposed thereunder by the Secretary. See id. at 156-57, 106 S.Ct. at 2457; see also Dillon Family & Youth Servs., Inc. v. Department of Human Servs., 965 F.2d 932, 933 n. 1 (10th Cir.1992). Thus, disapproval of SPA No. 90-13 as noncompliant exposes NMDHS to the loss of federal financial participation if it adheres to the proposal. See, e.g., Illinois ex rel. Illinois Dep't of Pub. Aid v. United States Dep't of Health & Human Servs., 772 F.2d 329 (7th Cir.1985).
 
 
 3
 The Medicaid program mandates coverage for the "categorically needy," who are already eligible to receive Aid to Families with Dependent Children (AFDC), 42 U.S.C. Secs. 601-617, or Supplemental Security Income (SSI), 42 U.S.C. Secs. 1381-1383d. Additionally, states are permitted to extend coverage to the "medically needy," who meet nonfinancial eligibility requirements for AFDC or SSI but have income or resources over applicable limits, and the "optional categorically needy," who either qualify for but for some reason do not receive SSI or would qualify for SSI but for their institutionalized status. See Herweg v. Ray, 455 U.S. 265, 268-69, 102 S.Ct. 1059, 1062-63, 71 L.Ed.2d 137 (1982); Lamore v. Ives, 977 F.2d 713, 718-19 (1st Cir.1992); see also Atkins, 477 U.S. at 157-58, 106 S.Ct. at 2457-59. We are concerned here with the last group, particularly institutionalized married persons, to whom New Mexico has for some time extended Medicaid coverage. The controlling statutory provisions impose an income cap on these individuals--they are ineligible if their income exceeds a state standard based on a multiple of the SSI benefit rate. See 42 U.S.C. Secs. 1396a(a)(10)(A)(ii)(V), 1396b(f)(4)(C). While the Medicaid statute provides a detailed definition of income for purposes of this cap, it does not specify rules for determining ownership of that income, particularly as between spouses. See Purser v. Rahm, 104 Wash.2d 159, 702 P.2d 1196, 1200-01 (1985) (en banc), cert. dismissed, 478 U.S. 1029, 107 S.Ct. 8, 92 L.Ed.2d 763 (1986); see also Washington v. Bowen, 815 F.2d 549, 553 (9th Cir.1987) (name-on-the-check rule for determining ownership of income has no explicit basis in either Medicaid statute or regulations). That omission lies at the heart of the present dispute.
 
 
 4
 On April 18, 1990, a class of aged, blind, or disabled married persons needing institutional care commenced an action in the United States District Court for the District of New Mexico, Van Gilder v. Valdez, No. CIV 90-0382, seeking to enjoin NMDHS from denying or terminating their Medicaid benefits pursuant to Sec. 1396b(f)(4)(C) on the basis of excessive income levels determined under the name-on-the-check rule. The plaintiffs alleged that, because the bulk of the income supporting them and their respective spouses happened to be paid in their name, the Secretary's rule disqualified them for Medicaid even though their true personal income, according to New Mexico community property law, clearly fell under the cap. See also, e.g., Purser, 702 P.2d at 1197-98 (state class action raising same point with respect to Washington community property law); cf. Washington v. Bowen, 815 F.2d at 552-53 (discussing converse difficulty created for institutionalized applicant's at-home spouse, typically the wife, who may be denied much of her rightful income by combined operation of name-on-the-check rule and income spend-down requirement imposed on institutionalized husband). The plaintiffs' characterization of New Mexico community property law was not, and is not now, a matter subject to dispute. See N.M.Stat.Ann. Sec. 40-3-6 to Sec. 40-3-17; Hodges v. Hodges, 101 N.M. 67, 678 P.2d 695, 697 (1984) (property acquired during marriage by either husband or wife is presumed to be community property); DeTevis v. Aragon, 104 N.M. 793, 727 P.2d 558, 563 (Ct.App.1986) (both spouses have present vested right to one-half of community property).
 
 
 5
 On May 9, 1990, the district court entered a stipulated judgment directing NMDHS to adhere to the state's community property law when determining the eligibility of married persons seeking Medicaid benefits for institutionalized care. Shortly thereafter, NMDHS submitted SPA No. 90-13 for administrative approval. The Van Gilder plaintiff class, as intervenors,[2] now join NMDHS in challenging the Secretary's adverse decision on the plan amendment.
 
 II.
 
 6
 We review the Secretary's disapproval of a state plan under Administrative Procedure Act standards and therefore must affirm unless that decision is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. Louisiana v. United States Dep't of Health & Human Servs., 905 F.2d 877, 881 (5th Cir.1990) (quoting 5 U.S.C. Sec. 706(2)(A)); see also Erie County Geriatric Ctr. v. Sullivan, 952 F.2d 71, 77 (3d Cir.1991). Because statutory construction is involved, we must consider the deference due the Secretary's interpretation of the statute she administers. See Webb v. Hodel, 878 F.2d 1252, 1255 (10th Cir.1989); see, e.g., Washington v. Bowen, 815 F.2d at 553-54. When Congress explicitly delegates to an agency the authority to elucidate a specific statutory provision, the agency's interpretation is given controlling weight unless arbitrary, capricious, or manifestly contrary to the statute. Hecla Mining Co. v. United States, 909 F.2d 1371, 1375 (10th Cir.1990) (quoting Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843-44, 104 S.Ct. 2778, 2781-82, 81 L.Ed.2d 694 (1984)). Absent such an explicit delegation, the agency's interpretation generally controls if it is reasonable and consistently applied, id.; Webb, 878 F.2d at 1255, though no deference is warranted if the interpretation is inconsistent with the legislative intent reflected in the language and structure of the statute or if there are other compelling indications that it is wrong, Webb, 878 F.2d at 1255; see, e.g., Trevino-Casares v. United States Parole Comm'n, 992 F.2d 1068, 1073 (10th Cir.1993).
 
 
 7
 HCFA argues that Congress explicitly directed use of the Secretary's SSI methodology for attributing income between spouses, particularly the name-on-the-check rule, by specifying in Sec. 1396b(f)(4)(C) that, for purposes of the statutory cap, the applicant's income is to be "determined under [42 U.S.C.] Sec. 1382a," which provides a detailed definition of SSI income. Two points undermine this argument. First, these statutes direct the Secretary to make the Medicaid cap determination by following legislatively prescribed standards (which do not include a name-on-the-check rule) for calculating SSI income; they do not, as HCFA appears to assume, authorize wholesale importation of all policies and rules of thumb informally developed by the agency in the SSI context. Second, we have already noted the more fundamental point that the pertinent statutes relating to income definition and computation do not even address--much less expressly authorize the Secretary to resolve--the matter of income ownership at issue in this case.[3] Thus, the Secretary's name-on-the-check rule for determining income ownership is not entitled to controlling weight under the explicit-delegation standard of deferential review.
 
 
 8
 Nevertheless, if that were the end of the matter, we might still defer to the Secretary's rule under the implicit-delegation standard as a reasonable, if debatable, method for implementing the income cap in Sec. 1396b(f)(4)(C). There are, however, some very important countervailing considerations, following from both the structure of the Medicaid program and the nature of the legal landscape in which it is located, that bear directly on the controlling question of Congressional intent.
 
 
 9
 "[I]t must be remembered that 'Congress acts ... against the background of the total corpus juris of the states....' " Wallis v. Pan Am. Petroleum Corp., 384 U.S. 63, 68, 86 S.Ct. 1301, 1304, 16 L.Ed.2d 369 (1966) (quoting Henry M. Hart Jr. & Herbert Wechsler, The Federal Courts and the Federal System 435 (1953)). Thus, for example, the Supreme Court has long held in the tax area--where, as here, federal statutory provisions define income and attach significant consequences to its ownership without defining what ownership entails--that state law controls the attribution of income. See, e.g., United States v. Mitchell, 403 U.S. 190, 194-97, 91 S.Ct. 1763, 1766-68, 29 L.Ed.2d 406 (1971); Poe v. Seaborn, 282 U.S. 101, 109-10, 51 S.Ct. 58, 58, 75 L.Ed. 239 (1930). Even more to the point, this line of cases specifically reflects the use of state community property law to determine ownership of the property interests taxed by the federal scheme.
 
 
 10
 Furthermore, the particular area of state law with which we are concerned, dealing with matters of family relations ordinarily reserved from federal encroachment, weighs heavily in favor of honoring the state's policy choices. Community property is not a fiction and is not lightly to be disregarded. Indeed, the Supreme Court has held that state family property law is not to be displaced by a federal enactment absent an affirmative expression of such Congressional intent and a compelling federal need:
 
 
 11
 Insofar as marriage is within temporal control, the States lay on the guiding hand. The whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States. Federal courts repeatedly have declined to assert jurisdiction over divorces that presented no federal question. On the rare occasion when state family law has come into conflict with a federal statute, this Court has limited review under the Supremacy Clause to a determination whether Congress has positively required by direct enactment that state law be pre-empted. A mere conflict of words is not sufficient. State family and family-property law must do major damage to clear and substantial federal interests before the Supremacy Clause will demand that state law be overridden.
 
 
 12
 Hisquierdo v. Hisquierdo, 439 U.S. 572, 581, 99 S.Ct. 802, 808, 59 L.Ed.2d 1 (1979) (internal citations and quotations omitted); see also Mansell v. Mansell, 490 U.S. 581, 587, 109 S.Ct. 2023, 2028, 104 L.Ed.2d 675 (1989) ("Because domestic relations are preeminently matters of state law, we have consistently recognized that Congress, when it passes general legislation, rarely intends to displace state authority in this area."). We also note that where, as here, coordinated state and federal efforts exist within a complementary administrative framework, and in pursuit of common purposes, the case for federal preemption is less persuasive as a general matter. Washington v. Bowen, 815 F.2d at 557 (quoting New York State Dep't of Social Servs. v. Dublino, 413 U.S. 405, 421, 93 S.Ct. 2507, 2516, 37 L.Ed.2d 688 (1973)).
 
 
 13
 Neither of the necessary conditions for disregarding state family property law are present here. In light of what we have already said about Congress's silence on the matter of income ownership in general, and the absence of a clear indication that the income cap was meant to undercut state community property laws in particular, the requisite expression of preemptive legislative intent is plainly lacking. We are also unpersuaded that a state legal scheme effecting a fair and reasonable distribution of marital income between husband and wife somehow does major damage to the objectives of the Medicaid program. See Purser, 702 P.2d at 1204 ("The equitable treatment of married people under community property law does no 'major damage' to the 'clear and substantial' objectives of the Medicaid law."). Adherence to state family property law will undeniably give rise to some differences in treatment between applicants in community property and noncommunity property states. However, any concern in this regard "must be heard against the background of express language in the Medicaid statute providing that states should have flexibility in operating their Medicaid programs." Washington v. Bowen, 815 F.2d at 556. Furthermore, while there are parts of the Medicaid statute, directed to such specific program-related ends as the provision of an essential minimum of coverage and the quality and efficient utilization of care, that are oriented to uniformity, "[n]o comparable purpose exists for uniformity when determining the income ownership of an institutionalized applicant for Medicaid eligibility purposes." Purser, 702 P.2d at 1204. Finally, the Supreme Court has, in a different but instructive context, counselled against reading differences of state family property law into federal legislation "to spell out a lack of uniformity." Poe, 282 U.S. at 117-18, 51 S.Ct. at 61 (holding differences in federal tax treatment associated with operation of state community property laws consistent with constitutional requirement of uniformity); see Chiles v. United States, 843 F.2d 367, 370 (9th Cir.1988).
 
 
 14
 We conclude that Congress intended to rely on, rather than supplant, state family property law and that imposition of the Secretary's name-on-the-check rule on NMDHS contrary to state community property law is therefore inconsistent with the Medicaid statute. The decision disapproving SPA No. 90-13 must, accordingly, be reversed. See, e.g., Department of Health Servs. v. Secretary of Health & Human Servs., 823 F.2d 323 (9th Cir.1987) (reversing Secretary's disapproval of state plan amendment proposing use of California community property law); Washington v. Bowen, 815 F.2d 549 (reversing Secretary's disapproval of state plan amendment proposing use of Washington community property law); see also Purser, 702 P.2d 1196 (requiring state Medicaid administrator to apply community property law in determining eligibility for benefits). But see In re Hamner, 427 So.2d 1188 (La.1983) (reversing lower court decision requiring state Medicaid agency to determine eligibility under community property law).
 
 
 15
 The decision of the Secretary is REVERSED.
 
 
 
 *
 Honorable Robin J. Cauthron, District Judge, United States District Court for the Western District of Oklahoma, sitting by designation
 
 
 [1]
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist our review. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. Accordingly, petitioner's motion to resolve the petition on the briefs is granted over intervenors' objection, and the matter is hereby submitted without oral argument
 
 
 [2]
 Another panel of this court issued an order on October 20, 1992, permitting intervention under Fed.R.App.P. 15(d). On November 4, 1992, the same panel deemed HCFA's untimely objection thereto as a motion for reconsideration and denied it without prejudice to renewal before the merits panel. HCFA never renewed the motion, but reargued the matter in its brief. Even if we were to overlook this procedural omission, given intervenors' substantial and unique interest in the outcome--ultimately, their Medicaid benefits hang in the balance--we would reaffirm the decision to permit intervention. See generally Bales v. NLRB, 914 F.2d 92, 94 (6th Cir.1990) (Rule 15(d) intervention granted to one with "substantial interest in the outcome"); Yakima Valley Cablevision, Inc. v. FCC, 794 F.2d 737, 744-45 (D.C.Cir.1986) (Rule 15(d) intervention granted to one "directly affected by" agency policy). HCFA argues that since an appellate court cannot certify a class, we cannot allow intervention by a class not certified in this particular proceeding. HCFA cites no pertinent authority for this proposition, which in our view confuses intervention with the independent matter of certification. Our allowance of intervention does not entail, by necessity or intention, any opinion on the legality or propriety of intervenors' class status
 
 
 [3]
 The Medicaid regulations do take up the analytically subsequent issue of when income concededly owned by an applicant's spouse may nevertheless be deemed available to the applicant, but they expressly reject any presumption of spousal support in the present context where institutionalization of the applicant physically separates the couple. See 42 C.F.R. Sec. 435.723(b)-(d)