Kathleen **FRANSEN**, Appellee,

v.

**IOWA DEPARTMENT OF HUMAN SERVICES**, Appellant.

No. 84–1919.

Supreme Court of Iowa.

Nov. 13, 1985.

Thomas J. Miller, Atty. Gen., Gordon E. Allen, Sp. Asst. Atty. Gen., Dan Hart and Eleanor E. Lynn, Asst. Attys. Gen., for appellant.

Martin Ozga, Des Moines, Carroll L. Lucht, Iowa City, and Steven P. Wandro, Sioux City, for appellee.

Considered by HARRIS, P.J., and Mc-GIVERIN, LARSON, CARTER and WOLLE, JJ.

McGIVERIN, Justice.

The questions involved here arose in connection with a decision by respondent Iowa Department of Human Services (DHS) to terminate benefits petitioner Kathleen Fransen and her son, Donald Pittman, had been receiving under the Aid to Families with Dependent Children program (AFDC). The commissioner of DHS affirmed a hearing officer's determination that petitioner received Old Age Survivors and Disability Insurance (OASDI) as representative payee on behalf of her disabled husband, Donald Fransen, and that this income was deemed available to petitioner and her son. On judicial review, the district court reversed the commissioner. We now reverse the district court and uphold the commissioner's ruling.

The issue presented for our review is whether the state's treatment of a step-parent's OASDI benefits, paid to a representative payee who also is a recipient of AFDC, is inconsistent with regulations promulgated under the Social Security Act. 42 U.S.C. § 301 *et seq.* We consider the alleged conflict between the state and federal regulations in view of the duty of support that exists between spouses and step-parents and step-children under Iowa law and other federal regulations which govern the payment of AFDC benefits.

Petitioner and her son had received AFDC benefits over an extended period of time. Donald Fransen and petitioner were

ceremonially married on July 9, 1983, but had lived together prior to that time. Donald Fransen received Supplemental Security Income (SSI)[1] until November 1981 when he was put on social security disability payments. These OASDI benefits of $461[2] per month were paid to petitioner as representative payee on behalf of her husband.

In August 1983, the local DHS office determined that petitioner and her son no longer qualified for AFDC assistance because their total available income exceeded program eligibility limits. DHS notified petitioner by mail on August 8 that her benefits would be cancelled effective September 1.

In reaching the decision to cancel petitioner's AFDC benefits, DHS relied on a departmental regulation which exempts from income for AFDC eligibility purposes:

Any income restricted by law or regulation which is paid to a representative payee, *other than a parent who is the applicant or recipient,* unless the income is actually made available to the applicant or recipient by the representative payee.

498 Iowa Admin.Code 41.7(6)(t) (emphasis added).

Although Donald Fransen received OASDI benefits through petitioner as his representative payee, DHS reasoned that because she was a parent receiving AFDC, the benefits were not exempt from being counted as available income to her.

Consequently, DHS calculated that $154 of Donald Fransen's $461 monthly benefits would meet his needs,[3] and the remaining $307 could be applied to support petitioner and her son. This was based on the step-parent "deeming" rule, 42 U.S.C. section 602(1)(31) and 498 Iowa Admin.Code section 41.7(8)(b), when the child's step-parent lives in the same home as the child.

Therefore, the excess of Donald Fransen's benefits of $461 over the amount necessary for his support of $154 or a difference of $307 was added to the income of petitioner and her son who also were receiving monthly benefits of $76 each based on Donald Fransen's disability. This increased the total monthly income for petitioner and her son to $459 ($307 plus $152) which exceeded the $305 standard of need set by DHS for two persons living in Iowa. *See* 498 Iowa Admin.Code 41.8(2). As a result, petitioner and her son became ineligible for AFDC benefits.

Petitioner timely made an administrative appeal regarding the cancellation of her AFDC payments. After an evidentiary hearing, the hearing officer filed a proposed decision affirming the cancellation of petitioner's benefits due to her ineligibility. Upon review after further appeal, the commissioner of DHS adopted the proposed decision of the hearing officer and it became the final decision of the agency.

Fransen filed a petition for judicial review in district court, Iowa Code section 17A.19 (1983), seeking resumption of her AFDC and medical assistance benefits.[4] The district court reversed the commissioner's ruling and held that the rule, 498 Iowa Admin.Code 41.7(6)(t), which governs Iowa's treatment of disability benefits paid to a representative payee who is also an AFDC recipient was in conflict with federal regulations. The court reasoned that the rule unlawfully restricted the representative payee's discretion to use the benefits for purposes he or she determined to be in the beneficiary's best interest; therefore,

1. In 1972, Congress revamped categorical assistance programs, replacing federal-state aid to the aged, blind and disabled with a fully federal scheme, known as the Supplemental Security Income program. See Title XVI, 42 U.S.C. § 1381 *et seq.*

2. The amount of Donald Fransen's check was $449 per month because a medicare premium of $12.20 was deducted before payment.

3. Iowa has set the standard of need for one person at $154 per month. 498 Iowa Admin. Code 41.8(2).

4. When petitioner and her son became ineligible for AFDC, their right to medical assistance benefits also terminated. 42 U.S.C. § 1396; 42 C.F.R. § 435.110(a); 498 Iowa Admin.Code 75.-1(1).

the state regulation, rule 41.7(6)(t), was declared invalid as violative of the supremacy clause, U.S. Const. art. VI, cl. 2, which mandates that federal law shall be the supreme law of the land.

Consequently, the district court held the OASDI benfits received by Donald Fransen could not presumptively be deemed available income to petitioner and her son for the purpose of determining their AFDC eligibility. Petitioner was awarded back payments of AFDC, and DHS was ordered to reimburse her for any medical expenses she incurred while her AFDC and medical assistance benefits were withheld. From that decision, respondent agency appealed to us. Iowa Code § 17A.20.

■ I. *Applicable federal and state regulations.* AFDC is a joint federal and state benefits program designed to provide financial assistance to needy dependent children and the parents and relatives who live with and care for them. 42 U.S.C. § 601–615. Participation by a state is voluntary. However, when a state seeks to qualify for federal AFDC funding, it must operate a program that does not conflict with provisions of the federal Social Security Act. *Townsend v. Swank,* 404 U.S. 282, 286, 92 S.Ct. 502, 505, 30 L.Ed.2d 448, 453 (1971); *Oberschachtsiek v. Iowa Department of Social Services,* 298 N.W.2d 302, 304 (Iowa 1980) ("state regulations which contravene the federal regulatory scheme are invalid under the supremacy clause.") Iowa has established such a program by statute. Iowa Code ch. 239.

Each state participating in the AFDC program must determine a public assistance standard of need, which is the level of income that the state believes necessary for an individual's maintenance and support. *See* Iowa Admin.Code 41.8(2). Under federal law, states are required to "take into consideration any other income and resources of [the] child or relative claiming aid," 42 U.S.C. § 602(a)(7), when determining AFDC eligibility. A state agency administering benefits is warned against duplication between other types of assistance and AFDC where the standard

of need is being met by other assistance. 45 C.F.R. § 233.20(a)(3)(vii). A state agency is also required to determine need and amount of assistance both objectively and equitably and to take into consideration all types of income in the same way. 45 C.F.R. § 233.20(a)(1)(i).

In accordance with its interpretation of these federal regulations, DHS calculated the state standard of need for petitioner and her son and "deemed" or presumed that the amount paid to petitioner as representative payee on behalf of her husband was available income to both, pursuant to rule 41.7(6)(t), for the purpose of determining their AFDC eligibility.

The federal regulation, 20 C.F.R. section 404.2035, allegedly in conflict with this state rule details the responsibilities of a representative payee. A representative payee is selected by the social security administration if "the interest of a beneficiary will be served by representative payment rather than direct payment of benefits." 20 C.F.R. § 404.2001(a). Ordinarily, a representative or protective payee is appointed when the beneficiary is prevented from managing benefits due to a mental or physical disability. 20 C.F.R. § 404.2010. A representative payee has a responsibility to:

> Use the payment he or she receives only for the use and benefits of the beneficiary in a manner and for the purposes he or she determines under the guidelines in this subpart, to be in the best interest of the beneficiary.

20 C.F.R. § 404.2035(a). Failure to fulfill these obligations can expose the representative payee to criminal liability for conversion. 42 U.S.C. § 408(e).

According to the district court's analysis of the department's "deeming" practice, petitioner and her son's AFDC payments were cancelled because the challenged state regulation, rule 41.7(6)(t), allowed DHS to presume that petitioner, as representative payee for her husband's benefits, would not use more of his income for his support than necessary to meet the standard of need set by the state, and that the

surplus over this amount would be used to meet petitioner and her son's needs. Such presumptions, the court reasoned, invaded the discretion of the representative payee to use the payments in what he or she determined to be in the beneficiary's best interest, and, thus, was inconsistent with federal regulations.

■■ II. *Obligation of support.* A mutual duty of support exists between husband and wife. Iowa Code § 597.14. Under Iowa law, a step-parent living with his step-children is legally obligated to provide for their support. *Kelley v. Iowa Department of Social Services,* 197 N.W.2d 192, 199 (Iowa), *appeal dismissed,* 409 U.S. 813, 93 S.Ct. 170, 34 L.Ed.2d 69 (1972). The step-parent's support obligation is "coextensive with a natural parent's obligation." *Id.*

Therefore, under Iowa law, petitioner's husband had a duty to provide support for her and for his step-son.

In accordance with this legal duty to support, Iowa regulation 41.7(6)(t) requires money received by petitioner as representative payee for her husband to be attributed to petitioner and her son for the purpose of determining their AFDC eligibility.

Under federal law, a representative payee is authorized to use benefits for four categories of needs, one of which is support of legal dependents.[5] 20 C.F.R. § 404.2040. This federal rule authorizes a representative payee to use part of the OASDI benefits for a legally dependent child's support. According to the regulation, such payments may be made "if the current maintenance needs of the beneficiary are met." 20 C.F.R. § 404.2040(c).

Under this record, no claim was advanced nor evidence produced to show Donald Fransen's current maintenance needs were not being met. The evidence would tend to show his needs were being met. Therefore, the presumption that petitioner, as representative payee for her husband,

would apply the excess amount of his benefits to support herself and her son to fulfill Donald Fransen's legal duty does not appear inconsistent with the federal regulations governing the duties and permissible expenditures of a representative payee.

A. *Authorities cited by petitioner.* In declaring the department's "deeming" policy in conflict with federal regulations governing the duties of a representative payee, the district court relied on *Cunningham v. Toan,* 728 F.2d 1101, 1103–04 (8th Cir. 1984), *vacated and remanded,* —— U.S. ——, 105 S.Ct. 896, 83 L.Ed.2d 912, *on remand* 762 F.2d 63 (1985); *Snider v. Creasy,* 548 F.Supp. 601, *aff'd* 728 F.2d 369, 372 (6th Cir.1984); *Riddick v. D'Elia,* 626 F.2d 1084, 1088 (2d Cir.1980); *Johnson v. Harder,* 383 F.Supp. 174 (D.Conn.1974), *aff'd,* 512 F.2d 1188, 1189 (2d Cir.), *cert. denied,* 423 U.S. 876, 96 S.Ct. 149, 46 L.Ed.2d 109 (1975); and *Barnes v. Reagen,* 501 F.Supp. 215, 219–20 (N.D.Iowa 1980). In those cases, the underlying rationale was that the representative payee must have discretion to use the benefits in the beneficiary's best interest.

However, those cases are distinguishable. The plaintiff in each of them was either a minor or mentally disabled parent receiving OASDI benefits paid through an adult relative who was acting as the representative payee. The plaintiffs were challenging the state department's inclusion of these benefits for purposes of determining AFDC eligibility for the minor or mentally disabled parent and her child. Those courts forbade such practices, reasoning that although the plaintiff parent had a duty to support her child, the representative payee was not under such a legal duty.

■ The existence of a joint legal duty of support on behalf of both the beneficiary and representative payee is crucial when determining the availability of income for AFDC purposes. The Supreme Court not-

---

**5.** These four categories include: a) current maintenance; b) institutional care for the bene-

ficiary; c) support of legal dependents; and 4) claims of creditors. 20 C.F.R. § 404.2040.

ed in *Heckler v. Turner*,[6] 470 U.S. ——, ——, 105 S.Ct. 1138, 1147, 84 L.Ed.2d 138, 150 (1985), that the availability principle serves to prevent states from "imputing financial support from persons who have no obligation to furnish it." This language suggests that the practice of "deeming" or imputing income to be available to an AFDC recipient is improper only when there is no legal obligation of support existing between the AFDC recipient and the person whose income is "deemed" available to the recipient.

In this case, both the beneficiary husband and the representative payee wife have a statutorily-imposed duty of support towards each other and petitioner's son. Iowa Code §§ 252A.2(3) and 252A.3.

■ We conclude the duty of a representative payee parent to use the money in the best interest of the beneficiary husband does not relieve that beneficiary of his or her legal duty of support nor make invalid the state's presumption that the payments will be used for legal support.

B. *The evidence as to support.* Further, the record shows that such money received by petitioner as representative payee was paid for the general household expenses of all the parties. Petitioner testified before the administrative hearing officer that her husband paid one-half the rent out of his own social security money, as well as other family necessities, such as food, toothpaste and soap to make up the difference between the actual amount of those expenses and her AFDC payments.

Even in the cases cited by petitioner to support her proposition that deeming invaded the representative payee's discretion, the courts in those cases noted that when it is shown that OASDI benefits paid through a representative payee are actually applied to support, they may be counted by a state agency as income. *Cunningham*, 728 F.2d at 1104; *Barnes*, 501 F.Supp. at 220 n. 18.

C. *Other relevant federal authorities.* The procedure of presuming needs and "deeming" income to be available is neces-

sary to the efficient operation of, and is relied upon by, other social welfare programs including SSI and Medicaid. *See* 42 U.S.C. §§ 1382(b)(2), 1382a(2), 1382c(f)(1). The Supreme Court has upheld the right of a state to deem one spouse's income as available to the other for purposes of determining medicaid eligibility in *Schweiker v. Gray Panthers*, 453 U.S. 34, 43, 101 S.Ct. 2633, 2640, 69 L.Ed.2d 460, 469 (1981). In *Fleshman v. Heckler*, 709 F.2d 999, 1002 (5th Cir.1983), *cert. denied*, 464 U.S. 1049, 104 S.Ct. 727, 79 L.Ed.2d 188 (1984), the court upheld the practice of deeming parental income to be available to a child for the purpose of determining eligibility for SSI benefits, even if that income was not actually available.

When the duty of the state not to allow double payment of benefits and to count all income available in determining AFDC eligibility, 45 C.F.R. § 233.20(a)(3)(vii) and 233.20(a)(1)(i), is considered in light of the above decisions, it appears that the state regulation is not inconsistent with the federal regulation governing the duties of a representative payee.

Here DHS is attempting to make a reasonable determination as to which families are most in need of assistance and to distribute its limited resources accordingly.

The state is legitimately concerned with the possibility of parents shielding income from their children in order to render them eligible for AFDC. It would be highly inefficient and expensive for the state to determine whether parents actually made their benefits available to their children. As the Court in *Schweiker* aptly stated:

There are limited resources to spend on welfare. To require individual determinations of need would mandate costly fact-finding procedures that would dissipate resources that could have been spent on the needy.

453 U.S. at 48, 101 S.Ct. at 2642, 69 L.Ed.2d at 473.

---

6. In *Heckler,* the Court held state welfare officials must include mandatory payroll deductions within the definition of "income" for de- termining AFDC eligibility. A representative payee arrangement did not exist in that case.

We note that had petitioner's husband been receiving his OASDI benefits directly rather than through a representative payee, those benefits unquestionably would have been included in the determination of petitioner and her son's eligibility for AFDC benefits. 42 U.S.C. § 602(a)(7). If we followed the position urged by petitioner, two families in identical circumstances, except that one was receiving OASDI benefits directly and the other through a representative payee, would be treated differently when their AFDC eligibility was computed by DHS.

III. *Effect of DEFRA.* Since petitioner's claim arose, changes have occurred which have clarified current federal law. In the Deficit Reduction Act of 1984 (DEFRA), Pub.L. No. 98–369, 98 Stat. 494, 1145 (effective Oct. 1, 1984), Congress added paragraph 38 to 42 U.S.C. § 602(a) which provides that in calculating the amount of income available for AFDC purposes, the state agency shall include:

> (B) [I]f such parent ... is living in the same home as the dependent child, ... any income of or available for such parent ... shall be included in making such determination ... (notwithstanding section 405(j), in the case of benefits provided under subchapter II of this chapter)....

Section 205(j) of Title II, 42 U.S.C. section 405(j) provides for payment to a representative payee for an individual entitled to receive OASDI benefits.

Since October 1, 1984, DEFRA clearly would *not* allow petitioner and her son to be eligible for AFDC under this record for two reasons.

In this section of the act, specific reference to section 205(j) was made. This indicates that Congress was cognizant of the arguable inconsistency between this provision of the act and those statutes governing the duties of a representative payee, *see* 42 U.S.C. section 408(e), and expressly indicated how such a conflict was to be resolved. *Cunningham, on remand,* 762 F.2d at 65; *Huber v. Blinzinger,* No. S

82–542, slip op. at 6 (N.D.Ind. filed April 8, 1985).

In addition, this resolution is consistent with the general purpose of DEFRA, which was to reduce federal expenditures. *See, e.g., Sadler on Behalf of Bailey v. Atkins,* 597 F.Supp. 1204, 1209 (D.Mass.1984). Further, it is in accord with the specific purpose of the amendment which was to "end the present practice whereby families exclude members with income in order to maximize family benefits, and [to] ensure that the income of family members who live together and share expenses is recognized and counted as available to the family as a whole." S.Rep. N. 300, 98th Cong., 2d Sess. 165 (1983).

This amendment, we believe, clarified the law and evinced the clear congressional and federal regulation intent to prevent duplicate payments from public assistance programs. *See Huber,* slip op. at 9, n. 1; *see also* 45 C.F.R. § 233.20(a)(3)(vii) (state agency warned against duplication between other types of assistance and AFDC where the standard of need is being met by other assistance).

IV. *Position of U.S. Secretary of Human Services.* Finally, we note that the United States Secretary of Human Services, which office promulgated the federal regulations in question here, supports respondent's position.

In recent interim regulations and in comments to them, the Secretary expressly addressed the treatment of OASDI benefits paid to the parent of a dependent child through a representative payee for purposes of AFDC eligibility by stating:

> All of the income and resources of the individuals required to be included in the assistance unit must be considered in determining eligibility and payment for the assistance unit. In this connection, the statute specifically provides for the inclusion of title II benefits notwithstanding [42 U.S.C. § 405(j)]. When title II benefits are paid to a representative payee on behalf of a member of the assistance unit

and the payee lives in the same household as the assistance unit, the title II benefits must be counted as income. When the representative payee does not live in the household, the title II benefits are included only to the extent that the payee makes them available for the support of the beneficiary. Conforming changes in title II regulations will be published shortly.

49 Fed.Reg. 35,586, 35,589 (1984).

In *Cunningham,* the court noted the Secretary submitted an amicus brief taking the position that the district court misinterpreted the statutory and regulatory obligations of representative payees in administering OASDI benefits, and that it is permissible for a state to utilize its AFDC standard of need to determine which part of OASDI benefits will satisfy a beneficiary's maintenance needs and to conclusively attribute the remainder as income available to the beneficiary's dependent child. 728 F.2d at 1104–05. The facts in *Cunningham,* as in the present case, arose before the enactment of DEFRA.

This position was reaffirmed in *Gorrie v. Heckler,* 606 F.Supp. 368, 371 (D.Minn. 1985), where the Secretary argued that this presumption was allowed because in passing DEFRA, paragraph 38, "Congress intended to create a legislative presumption of availability of income as to the individual and as to the family in recognition of the fact that family members who live together most likely share expenses."

V. *Conclusion.* In view of the above authorities, we conclude that rule 41.7(6)(t) is not inconsistent with the representative payee's discretion allowed by federal regulations. Consequently, we hold that rule 41.7(6)(t) does not conflict with federal regulations and is therefore not violative of the federal supremacy clause, U.S. Const. art. VI, cl. 2.

We reverse the district court and uphold the decision of the commissioner of DHS.

REVERSED.