Bernice S. TORNER, by Her Next
Friend, William V. TORNER,
Appellee,

v.

STATE of Iowa, Iowa Department of So-
cial Services, Michael V. Reagen (Com-
missioner of the Iowa Department of
Social Services), Michael J. Wiedman,
Rayona Roszell, and Black Hawk
County Department of Social Services,
Appellants.

No. 86–183.

Supreme Court of Iowa.

Jan. 14, 1987.

Thomas J. Miller, Atty. Gen., Gordon E. Allen, Sp. Asst. Atty. Gen., and Candy Morgan, Asst. Atty. Gen., for appellants.

Stephen D. Lombardi of Mosier, Thomas, Beatty, Dutton, Braun & Staack, Waterloo, for appellee.

Considered by McGIVERIN, P.J., and LARSON, SCHULTZ, CARTER and NEUMAN, JJ.

McGIVERIN, Justice.

Bernice Torner, by her next friend and husband William Torner, petitioned for judicial review of the decision of the respondent Iowa Department of Social Services declaring Bernice ineligible for continued Title XIX[1] Medicaid benefits because her income was too high. The district court ruled that an Iowa administrative rule governing the diversion of her income violated the federal statutory scheme and the due process clauses of the United States and Iowa Constitutions; it remanded the case to the agency for fact-finding on the issue of income "available" to Bernice. The Department has appealed from the district court's ruling. Upon consideration of the issues raised on appeal, we reverse.

Bernice Torner is an elderly woman who has suffered a number of strokes. She remained in the family home following the strokes until her husband was no longer capable of caring for her. At that time in 1976, she was admitted to a nursing home. From 1980 to 1982, Bernice received medical assistance benefits from the State of Iowa. *See* Iowa Code ch. 249A (1981); Iowa Code ch. 249A (1979). During that time, the Department in determining Bernice's Medicaid eligibility under its agency rules had diverted a part of her private pension income to pay William's expenses.

Due to a change in the Department's administrative rules in 1982, Bernice was notified she would no longer be eligible for Medicaid. The new rules allowed diversion of income from an institutionalized benefit recipient to a noninstitutionalized spouse only when the noninstitutionalized spouse failed to have personal monthly income of at least $284.30. *See* 498 Iowa Admin. Code § 75.5(3).[2] William, the noninstitutionalized spouse in the Torner marriage, received monthly SSI benefits, including his Medicare premium, of $381.00, clearly in excess of the regulatory amount. To maintain her eligibility for Medicaid under the new regulations, Bernice could have only $852.90 in monthly income. *See* 498 Iowa Admin. Code § 75.1(7). In fact, she received $906.49 in SSI and Northwestern Bell pension benefits after deduction of her $25.00 personal needs allowance. The agency denied Bernice's request for a hearing and confirmed the termination of benefits.

Bernice filed a petition for judicial review and applied for and was granted a temporary stay in district court of the agency's enforcement of this decision. *See* Iowa Code § 17A.19(5) (1981). The district court on judicial review determined Bernice was entitled to an administrative hearing prior to the termination of her benefits and remanded the case to the Department. *See* Iowa Code § 17A.19(8)(d).

---

1. 42 U.S.C.A. §§ 1396–1396p (West 1983 & Supp. 1986).

2. This rule was originally numbered 770 Iowa Admin. Code § 75.5(3). In 1983 that part of the administrative code was reorganized and the rule was renumbered 498 Iowa Admin.Code § 75.5(3). For the purpose of ease of locating the rule, we will refer to it as 498 Iowa Admin. Code § 75.5(3).

On remand, the Department, after hearing, again concluded Bernice was ineligible for continued Medicaid benefits.

Bernice next filed the present judicial review petition in district court, claiming (1) the new administrative rule, 498 Iowa Administrative Code section 75.5(3), was contrary to federal law; and (2) the rule violated her right to due process by creating an irrebuttable presumption that Bernice's income was all available only for her expenses. The court decided in favor of Bernice on the due process issue and remanded the case to the agency for a determination of whether or not all of Bernice's income is available for the payment of her expenses.

The Department has appealed from the district court's ruling. *See* Iowa Code § 17A.20 (1985). This ruling is a final judgment for purposes of our review even though it was ordered remanded to the agency for further proceedings. *See Bishop v. Iowa State Board of Public Instruction*, 395 N.W.2d 888, 890 (Iowa 1986). The Department, on appeal, asserts that its rule on diversion of an institutionalized person's income is consistent with federal law and does not violate substantive due process.

I. *Applicable federal and state statutes and regulations.* Medicaid is a joint federal and state benefit program designed to provide medical assistance for needy people. *Schweiker v. Gray Panthers*, 453 U.S. 34, 36, 101 S.Ct. 2633, 2636, 69 L.Ed.2d 460, 465 (1981). Participation by a state in the program is voluntary; however, if a state participates, it must comply with the federal plan requirements. *In re Hamner*, 427 So.2d 1188, 1190 (La. 1983); *see* 42 U.S.C.A. § 1396a(a), (b).

The dispute in this case centers on a diversion rule adopted by the Iowa Department of Social Services that affects Bernice Torner's continued eligibility for Medicaid benefits. Bernice argued, and the district court found, that the diversion rule was contrary to federal law. The Department contends that rule 75.5(3) is in harmony with the federal statute and regulations. *See* 42 U.S.C.A. § 1396a(a)(17); 42 C.F.R. §§ 435.723(d), 435.725 (1985).

A. *The federal framework.* The federal statute requires that a state plan have "reasonable standards for determining eligibility" consistent with the objectives of Medicaid, taking into account only the income available to a recipient and providing a reasonable evaluation of income. 42 U.S.C.A. § 1396a(a)(17). The state plan also is to place a premium on determining eligibility "consistent with simplicity of administration and the best interests of the recipients." 42 U.S.C.A. § 1396a(a)(19).

Based on this statutory framework, the Secretary of Health and Human Services promulgated appropriate rules and regulations. 42 U.S.C.A. § 1302. These regulations are found in part 435 of Title 42 of the Code of Federal Regulations.

The federal regulatory scheme addresses the issue of diversion. *See* 42 C.F.R. § 435.725. In determining the continuing eligibility of an institutionalized individual for Medicaid purposes, the section requires the department or state to apply the institutionalized person's income,[3] less a personal needs allowance, to his or her cost of care unless the noninstitutionalized spouse has less income than the highest of three limits. 42 C.F.R. § 435.725(a), (c). Here, the SSI standard of need and the optional state standard, two of the limits, both set William's standard of need at $284.30. The third standard is inapplicable here. Therefore, under the federal scheme, Bernice would be unable to divert any income to William because his income exceeded the SSI standard of need.

B. *The state framework.* Iowa has established a medical assistance plan for the needy. *See* Iowa Code ch. 249A (1985). Under that plan, an individual whose income exceeds federally prescribed limits is

---

**3.** "Income" is defined and explained in detail at 42 C.F.R. §§ 416.1102–.1124. Under the definition set out therein, the income from the North-

western Bell pension would be Bernice's for SSI purposes.

barred from receiving benefits. Iowa Code § 249A.3(5). This bar prevents a situation in which federal financial participation would not be available and the state would be responsible for all the program benefits an individual would be entitled to receive. The chapter requires the Iowa commissioner of human services to make rules and establish policies to implement the chapter. Iowa Code § 249A.4 unnumbered para.

Under this power, the commissioner promulgated rules governing the eligibility of an individual for Medicaid. The administrative rules set a maximum income level for eligibility under the state Medicaid plan. *See* 498 Iowa Admin.Code § 75.1(7) (at the time of this case $852.90, or 300% of the SSI federal benefit rate for one person in his or her home). The rules also state how the department is to compute an institutionalized individual's income. *See* 498 Iowa Admin.Code § 75.5. The relevant subsection provides in part:

The institutionalized individual shall be treated as an individual with regard to income and resources after the month in which the couple ceases to live together, except that if the institutionalized spouse is determined to be eligible for medical assistance, a diversion from the institutionalized spouse's income shall be made for the maintenance needs of the noninstitutionalized spouse ..., not to exceed the following amounts:

a. For the maintenance needs of a noninstitutionalized spouse only, an amount which, when combined with the noninstitutionalized spouse's own income, equals the supplemental security income federal benefit rate for an individual in his or her own home.

498 Iowa Admin.Code § 75.5(3).

C. *The parties' contentions.* Bernice alleges that rule 75.5(3) is inconsistent with the federal statute requiring the state plan to set reasonable standards and count only income actually *available* to the Medicaid recipient. She also claims that the federal rules are silent on the issue of diversion of income.

The Department responds that rule 75.-5(3) is consistent with the federal rule. *See* 42 C.F.R. § 435.725(a), (c). The Iowa diversion rule has also been approved by the federal government as a part of Iowa's state plan, the Department points out.

■ It appears from our review of the relevant federal and state statutes and rules that there is no conflict between the provisions. The state rule on diversion, rule 75.5(3), can be harmonized with the federal rule. First, the state and federal rules allow diversion if the noninstitutionalized spouse does not have income to meet the SSI standard of need. Additionally, although the federal rule *allows* a higher optional state standard of need, which Iowa has not set, the federal government does not *require* the higher state limit for a noninstitutionalized spouse's income. For these reasons, we conclude the Iowa diversion rule, governing the computation of a Medicaid recipient's income, is not contrary to the federal Medicaid scheme as stated in the federal statute and rules.

II. *Constitutionality of Iowa diversion of income rule.*

A. *The Department's argument.* The Department, on appeal, challenges the district court's conclusion that the Iowa diversion rule raises an irrebuttable presumption violative of the Due Process Clause. The Department asserts that the United States Supreme Court has held the cases cited by the district court and Bernice inapplicable to reasonably drawn classifications in public assistance cases. The Department contends there is a rational basis for the rule under a substantive due process analysis; thus, the Department argues its diversion rule is not violative of the federal and Iowa Constitutions. *See* U.S. Const. amend. 14 § 1; Iowa Const. art. I, § 9.

In *Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), the Supreme Court declared a statutory social security eligibility requirement constitutional in the wake of a due process challenge. The Court restated its standard for testing the constitutional validity of a social security classification:

Particularly when we deal with a withholding of a noncontractual benefit under a social welfare program such as [Social Security], we must recognize that the Due Process Clause can be thought to interpose a bar only if the statute manifests a patently arbitrary classification, utterly lacking in rational justification.

*Id.* at 768, 95 S.Ct. at 2468, 45 L.Ed.2d at 540 (brackets in original) (quoting *Flemming v. Nestor,* 363 U.S. 603, 611, 80 S.Ct. 1367, 1373, 4 L.Ed.2d 1435, 1445 (1960)). This standard requires only a rational basis to validate the social welfare classification. In determining if such a basis was present, the Court in *Salfi* was willing to look at Congress' concern over potential abuses of the system and its attention to the costs and difficulties of individual determinations of need in setting forth a limitation on social welfare benefits. *Id.* at 777, 95 S.Ct. at 2472, 45 L.Ed.2d at 545–46. The Court stated that *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972) (typically irrebuttable presumptions are not favored under the due process clause), and *Cleveland Board of Education v. LaFleur,* 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974) (same), cases relied upon by Bernice in this action, were inapplicable even though the Court was reviewing the constitutionality of an irrebuttable presumption. *Salfi,* 422 U.S. at 771–72, 95 S.Ct. at 2469–70, 45 L.Ed.2d at 542.

■ B. *Bernice's argument.* Bernice posits numerous theories on which to distinguish *Salfi.* First, she points out that the constitutionality of a *statutory* irrebuttable presumption was at issue. She claims the fact this was a Congressional enactment weighed heavily in the Court's decision. It is not apparent from a reading of *Salfi* that the Court was swayed by the fact that Congress had passed the eligibility requirement. *Salfi* discusses cases involving statutes and regulations. The regulations adopted by an administrative agency are given the force of law, just like statutes. B. Schwartz, *Administrative Law* § 4.3 (2d ed. 1984). Therefore, we will not apply a different test when a constitu-

tional challenge is leveled at a social welfare classification that is found in a regulation, rather than a statute.

Bernice also contends that *Salfi* is inapplicable because she had a contract with the Department requiring it to pay Medicaid benefits to the nursing home in which she was residing. She claims the Resident Care Agreement executed by the Cedar Falls Lutheran Home, the Iowa Department of Social Services, and William Torner, on her behalf, created a contractual obligation on the Department's part to make the Medicaid benefit payments.

■ The department and the federal government set eligibility requirements for the receipt of Medicaid benefits. Benefits cannot be paid under Iowa Code chapter 249A unless the eligibility requirements are met. Iowa Code § 249A.3(5). This principle underlies the Resident Care Agreement entered into in this case because the agreement assumes that the institutionalized individual is receiving Title XIX Medicaid benefits; thus, if, as here, a Medicaid recipient cannot prove continuing eligibility, she will not be entitled to benefits even if a Resident Care Agreement is in effect.

C. *Rational basis for the Department's rule.* Finally, Bernice claims the Department did not have a legitimate goal when promulgating rule 75.5(3). She asserts that the State was looking for ways to deny benefits to groups of individuals to balance its budget.

■ The courts have required a classification regulating the social or economic affairs of a state to be reasonably based and free from invidious discrimination. *Dandridge v. Williams,* 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491, 501–02 (1970); *accord Salfi,* 422 U.S. at 777, 95 S.Ct. at 2472, 45 L.Ed. at 545–46 (federal welfare classifications must be rationally based). This standard is used so that available public funds can be allocated in such a way as fully to meet the needs of the largest possible number of needy families. *Dandridge,* 397 U.S. at 487, 90 S.Ct. at 1162, 25 L.Ed.2d at 503; *see Jefferson v.*

*Hackney,* 406 U.S. 535, 549–51, 92 S.Ct. 1724, 1733–34, 32 L.Ed.2d 285, 297–99 (1972). The use of formulas to determine social welfare eligibility conserves funds that would be used for costly individual determinations of need and frees those dollars for payment as program benefits to the truly needy. *Schweiker v. Gray Panthers,* 453 U.S. 34, 48, 101 S.Ct. 2633, 2642, 69 L.Ed.2d 460, 472–73 (1981) (regulations allowing deeming of income to institutionalized spouse approved).

The Department raises three bases for upholding its regulation: (1) the regulation was approved in the Iowa state plan and is consistent with federal law; (2) the regulation sets a single standard for all individuals, married and single; and (3) inherently, the regulation allocates limited public resources to those who are the most needy.

In response, Bernice argues that rule 75.5(3) limits her ability to divert income to William, ignoring their marital history of mutual support. The Secretary of Health and Human Services has stated, however, that there is no expectation of support when one spouse is at home and the other is institutionalized. Any assumption or expectation of support is undercut when the economic unit is split and one spouse is institutionalized. 45 Fed.Reg. 82254, 82256–57 (1980).

In a factually similar case, the Louisiana Supreme Court determined how to treat the retirement fund of a married institutionalized individual. *In re Hamner,* 427 So.2d 1188 (La.1983). The state department overseeing the Medicaid program had denied benefits to the institutionalized husband because his income exceeded the maximum income level for eligibility. He argued that one-half of his private retirement fund benefits belonged to his noninstitutionalized wife because Louisiana is a community property state. In rejecting his argument and upholding the determination he was ineligible for Medicaid, the court declared that national uniformity required a denial of benefits to the husband. *Id.* at 1191. Under the federal guidelines, the court stated that any other state faced with this situation would have to deny benefits to be eligible for continued federal financial participation. *Id.*

■ Uniformity at the state level should also be encouraged. In *Fransen v. Iowa Department of Human Services,* 376 N.W.2d 903 (Iowa 1985), we resolved questions about Iowa's "deeming" regulations. An individual receiving social welfare benefits cannot be deemed to have income received by his or her spouse until the non-recipient's standard of need has been met. *Id.* at 905. This principle can be applied here as well. Where one spouse (Bernice) is receiving Medicaid benefits under the Iowa regulations, diversion of the benefit recipient's (Bernice's) income may occur until the non-recipient (William) reaches the state-computed standard of need ($284.30). 498 Iowa Admin.Code § 75.5(3). When the non-recipient (William) has been brought up to the standard of need, the income is then applied to meet the cost of care of the social welfare recipient (Bernice). Under *Fransen* and the preceding analysis, the non-recipient spouse (William) is always guaranteed income of $284.30, the standard of need, before the benefit recipient (Bernice) utilizes any funds in offsetting her cost of care.

■ In *Fransen,* we acknowledged the need to put the state's limited resources to their best use. 376 N.W.2d at 908–09. By its adoption of rule 75.5(3), the Department has attempted to comply with that goal. We conclude that the Department has enunciated a rational basis for its rule.

Bernice also argues that the rule invidiously discriminates against her; thus, she should be allowed to continue to receive benefits under the prior regulations, which did not limit diversion of income. If we were to allow Bernice to be governed by the pre–1982 rules while determining the eligibility of new applicants under current rule 75.5(3), it is conceivable that Bernice would receive benefits while a new applicant in the same economic situation would not. This would not be equal treatment under the law because the Medicaid program is founded on continued eligibility.

We conclude that the Department did not invidiously discriminate against Bernice in adopting rule 75.5(3). The rule change was based on an agency determination that uniformity should be achieved and that the limited public assistance funds should be expended on those who had no retirement benefits to fall back on and whose spouses were capable of maintaining themselves at least at the SSI standard of need level. The rule is rationally related to a legitimate governmental interest. Therefore, 498 Iowa Administrative Code rule 75.5(3) is not violative of the due process clauses of the United States or Iowa constitutions.

D. *Subsequent legislation and agency rules.* If an individual becomes ineligible under the new regulations, the legislature previously has provided alternative means of dealing with the person's inability to pay for nursing home care.

From 1983 to 1985, the Iowa legislature enacted legislation that limited a nursing home's ability to involuntarily transfer an individual whose Medicaid benefits had been discontinued due to excess income. 1985 Iowa Acts ch. 259, § 13; 1984 Iowa Acts ch. 1310, § 6; 1983 Iowa Acts ch. 201, § 6. These provisions stated that an individual could not be involuntarily transferred after discontinuance of his or her Medicaid benefits if the person:

> agree[d] to pay all of the patient's income and resources not exempt under guidelines in Title XIX of the federal Social Security Act for continued care in the facility and that payment equal[led] or exceed[ed] the medical assistance reimbursement rate for the particular facility.

*E.g.,* 1985 Iowa Acts ch. 259, § 13. Under that legislation, Bernice would have been eligible to remain at the Cedar Falls Lutheran Home at the Medicaid recipient's rate of $28.10 per day, plus any excess income amount she had that was not exempt. This legislation also would have allowed William to retain his SSI benefits for his own care and maintenance.

While the legislature did not pass similar legislation in 1986, it allowed the Department to continue the medically needy program for individuals like Bernice who are residing in a nursing home and exceed the existing Medicaid income eligibility guidelines. 1986 Iowa Acts ch. 1246, § 303(2) first unlettered subpara. The Department recently has adopted rules for the medically needy. *See* 498 Iowa Admin.Code ch. 86. Under these rules, Bernice would remain eligible for Medicaid; thus, she would remain at the Cedar Falls Lutheran Home. *See id.* at §§ 86.8, 86.11(1), (3), 86.12(1), (4)(b), 86.14. Bernice, under these rules, could not divert any income to William unless his income drops below $284.30, the SSI standard of need.

III. *Disposition.* In summary, we reverse the ruling of the district court on the grounds: (1) that the regulation is consistent with the federal Medicaid scheme; and (2) that the Department had a rational basis for the adoption of a very limited diversion of income rule for the determination of Medicaid eligibility. The parties raised other arguments that we have considered and in which we find no merit.

REVERSED.